## PORT BLAKELY MILL CO. v. SHARKEY.

### (Circuit Court of Appeals, Ninth Circuit. May 7, 1900.)

### No. 563.

CARRIERS—TRANSPORTATION OF FREIGHT—CONTRACT—BREACH—MEASURE OF DAMAGES—PROFITS.

At the time of an agreement to transport certain horses to Alaska, and to deliver them not later than a day named, defendant was informed that the purpose in shipping the horses was to use them in freighting goods over the Chilcoot Pass; that there was a great demand at that point for horses of the kind to be shipped, and that plaintiff could make from $450 to $500 per day from such use of them. Plaintiff had not, however, entered into any contracts for freighting with said horses, but was depending upon the condition of business for securing such contracts when the horses were delivered. The horses were not delivered until 27 days after the time agreed to, and there was evidence that during the interval between the time when said horses were to arrive under the contract and the date of their arrival a two-horse team could earn from $50 to $75 a day in freighting, and that single horses could have been rented for that purpose at $20 a day. *Held*, that in estimating plaintiff's damages the jury might consider what might have been earned by the horses during the time of the delay.

In Error to the Circuit Court of the United States for the Northern Division of the District of Washington.

See 92 Fed. 425.

The defendant in error brought an action against the plaintiff in error, the Port Blakely Mill Company, as the owner of the bark Prussia, to recover damages caused by delay in the delivery of horses shipped on said bark from Seattle, Wash., to Dyea, Alaska. The complaint alleged, and the evidence tended to show: That on February 17, 1898, the defendant in error made a verbal contract with the plaintiff in error, in which the latter agreed to ship for him on the bark Prussia 25 head of horses, and that said bark would sail from Seattle not later than February 19, 1898, and arrive at Dyea not later than seven days thereafter; and that, relying on said contract, he loaded the horses on said bark for shipment, but that the Prussia did not sail from Seattle until February 24th, and did not arrive at Dyea until March 18, 1898. That the purpose of shipping said horses to Dyea was to use the same in freighting goods over the Chilcoot Pass for hire, and that the plaintiff in error was informed of such purpose at the time of making the contract, and was informed that there was a great demand for horses such as those which were shipped for that purpose. There was testimony that the plaintiff in error was told by defendant in error that he could make from $450 to $500 per day out of the horses, and that the plaintiff in error made a positive agreement to deliver said horses at Dyea in seven days after February 19, 1898. There was evidence that from February 26, 1898, there was a large amount of freight to be transported across Chilcoot Pass, and horses were in great demand, and that said condition of affairs existed up to and subsequent to the arrival of the Prussia at Dyea; that one of the horses shipped died on the voyage, without any fault on the part of the plaintiff in error, and that the remainder of the horses would have been worth the sum of $3,200 if they had arrived at the time agreed upon in said contract. It was admitted that the defendant in error had not entered into any contracts for freighting with the said horses, and had not contracted for any employment therefor, but was depending upon the condition of business at Dyea for securing such contracts and employment. There was testimony that during the interval between the time when said horses were to arrive under the contract and the date of their arrival a two-horse team could earn from $50 to $75 a day in freighting, and that single horses could have been rented for freighting at $20 a day. Upon the trial the court instructed the jury that in estimating the damages sustained

by the defendant in error through the delay in shipping the horses they might take into account what might have been earned by the horses at Dyea during the time of the delay. The jury returned a verdict assessing the damages at $6,670.

Preston, Carr & Gilman, Gorham & Gorham, and John K. Brown, for the plaintiff in error.

Fred H. Peterson, for the defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The question presented in this case is: What is the measure of damages for breach of contract by a carrier whereby the delivery of goods at the place designated in the contract of affreightment is delayed in a case in which profits would have been earned but for the delay, and where the carrier had notice at the time of making the contract of the necessity for prompt delivery and of the prospective profits? May such profits be taken into consideration in estimating the damages? The general rule is thus stated:

"No recovery can be had for loss of profits in contracts of sale made or contemplated by the shipper, unless the facts and circumstances of such sale are communicated to the carrier upon shipment."

5 Am. & Eng. Enc. Law (2d Ed.) 396; Pacific Exp. Co. v. Darnell Bros., 62 Tex. 639; Railway Co. v. Gilbert (Tex. Civ. App.) 23 S. W. 320; Brown v. Hadley (Kan. Sup.) 23 Pac. 492; Brownell v. Chapman, 84 Iowa, 504, 51 N. W. 249; Railroad Co. v. Ragsdale, 46 Miss. 458; Manufacturing Co. v. Pinch (Mich.) 51 N. W. 930; New Market Co. v. Embry (Ky.) 48 S. W. 980; Grindle v. Express Co., 67 Me. 317; Illinois Cent. R. Co. v. Cobb, Christy & Co., 64 Ill. 128.

The reason of the rule is that the contract of affreightment is presumed to have been made in view of the results which, to the knowledge of both parties thereto, would naturally follow its breach. While there is respectable authority for holding that profits are never in any case recoverable, since it may never certainly be known that profits might have been earned, the weight of authority, both English and American, sustains the rule that the party injured is entitled to recover all his damages, including gains that he might have earned as well as losses that he sustained, provided that they are certain, and that they are such as might naturally have been expected to follow the breach.

In Hadley v. Baxendale, 26 Eng. Law & Eq. 398, in an action against a common carrier for negligent delay in delivery, Alderson, B., said:

"Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally,—i. e. according to the natural course of things from such breach of the contract itself,—or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it."

In Simpson v. Railroad Co., 1 Q. B. Div. 274, Cockburn, C. J., said:

"The principle is now settled that, whenever either the object of the sender is specially brought to the notice of the carrier, or circumstances are known to the carrier from which the object ought in reason to be inferred, so that the object may be taken to have been within the contemplation of both parties, damages may be recovered for the natural consequences of the failure of that object."

In that case the plaintiff was allowed damages for loss of time and loss of profit on the ground that "loss of profit was a natural and probable result of the failure" of his purpose.

The plaintiff in error relies upon certain decisions, which, it is contended, sustain a contrary doctrine; such as Howard v. Manufacturing Co., 139 U. S. 199, 11 Sup. Ct. 500, 35 L. Ed. 147; Railroad Co. v. Hale, 83 Ill. 360; Allis v. McLean, 48 Mich. 428, 12 N. W. 640; Machine Co. v. Bryson, 44 Iowa, 159; Harvey v. Railroad Co., 124 Mass. 421; The Golden Rule (C. C.) 9 Fed. 334.

In Howard v. Manufacturing Co. it is true that the court said that the grounds upon which the rule of excluding profits in estimating damages in certain cases rests "are (1) that in the greater number of cases such expected profits are too dependent upon numerous, uncertain, and changing contingencies to constitute a definite and trustworthy measure of actual damages; (2) because such loss of profits is ordinarily remote, and not, as a matter of course, the direct and immediate result of the nonfulfillment of the contract." The case was one which involved the question whether damages were recoverable for loss of anticipated profits to the defendant from the plaintiff's failure to construct a flouring mill at a date specified in the contract. From the record it would appear that time was not made of the essence of the contract, and, as the court said, there were no "special circumstances attending the transaction from which an understanding between the parties could be inferred that the plaintiff was to make good any loss of profits incurred by a delay in furnishing and putting up such machinery according to the terms of the contract." It was upon that ground that damages on the basis of profits that might have been earned were denied. But the court in that case proceeded, after the language above quoted, to express the general doctrine, which is applicable to the present case:

"But it is equally well settled that the profits which would have been realized had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or of remoteness; or where, from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and mutual understanding of both parties at the time it was entered into."

In Railroad Co. v. Hale it was not averred or proved that the carrier had notice of the intended use of the property. The remarks of the court as to the uncertainty of the expected profits in that case were directed to a subject that was not necessarily involved. In Allis v. McLean it was held that profits which might have been earned by the use of a sawmill if the machinery therefor had been furnished within the time specified in the contract could not be considered in

estimating damages, for the reason, as stated by Judge Cooley, "that they are commonly uncertain and speculative, and depend upon so many contingencies that their loss cannot be traced with reasonable certainty to the breach of contract." The learned judge, however, proceeded to say:

"But in some cases profits are the best possible measure of damage, for the very reason that the loss is indisputable, and the amount can be estimated with almost absolute certainty."

A later decision by the same court may be regarded as favoring a more liberal doctrine. Manufacturing Co. v. Pinch, 51 N. W. 930. In that case it was held that in a suit to recover for machinery and repairs furnished for defendant's flouring mill he was entitled to show, in reduction of plaintiff's claim, the value of the use of the mill while it was compelled to lie idle by the failure of plaintiff to complete the contract to repair within the time specified. The court quoted from Sedg. Dam. (8th Ed.) par. 174:

"As a general rule, the expected profits of a business cannot be proved, and therefore cannot be recovered. They might have been made and they might not. Hence, in such cases, the measure of damages is not the expected profits, but the value of the use of the property or business."

And quoted further from the same authority (paragraph 186):

"Rent is given, not as a specific damage, but as a fair average measure of compensation."

So the ruling in Machine Co. v. Bryson, in which it was held that one who had made a contract with a sewing-machine company to rent a room, procure a team, and other necessary means for selling their machines, and devote his time thereto, could not recover for a breach of the contract the profits that he might have earned had the same been carried out, is modified by a later decision of the supreme court of Iowa in Brownell v. Chapman, 51 N. W. 249, in which it was held that in a claim for damages caused by failure to deliver boilers for a pleasure boat at a summer resort at the time agreed the measure of damages for the breach was the rental value of the boat, and not the interest on the capital invested therein for the time the defendant was deprived of its use; and that the objection that the rental value of the boat could not be taken as a measure of damages, because the boat had never been rented, and therefore had no established rental value, was untenable; and that the owner was entitled to damages for losses he sustained by enforced idleness of persons employed by him to insert the boilers. The opinion cites with approval the rule in Brown v. Foster, 51 Pa. St. 165, in which the trial court had said "that the measure in such a case is the ordinary hire of such a boat for the time in question for the time plaintiff was in default." The case of The Golden Rule was one in which damages were sought for the failure of the carrier to deliver 140 wheelbarrows at a place where the libelant had a contract to repair a levee, and had 125 men in waiting. The court said:

"A statement of libelant's claim seems to decide it against him, particularly as there is no showing whatever that the defendant's boat was in any wise advised of the circumstances rendering the delivery of the wheelbarrows a matter of urgency. These damages claimed are consequential."

It will be seen that the decision was placed upon the ground that the carrier had no knowledge of the facts that would have charged it with notice of the damage to ensue from a breach of the contract.

In Harvey v. Railroad Co. it was held in an action against a carrier for failure to carry that the measure of damages is the market value of the goods at the place where the carrier agreed to receive them, less the freight. In that case the owner informed the carrier at the time of making the contract that he did so because he wished to make contracts with third persons for the sale of goods to them. He subsequently made such contracts. It was held, in estimating the damages, that he was not entitled to the profits which he would have made; that the damages for which a carrier is liable from failure to perform his contract "are those which result from the ordinary and natural consequences contemplated at the time of making the contract"; and that the mere knowledge on the part of the carrier that the plaintiff intended to make contracts for the sale of the ties cannot impose a liability for loss of profits on such contracts. The court said: "Whether there would be a loss of profits, it was, of course, then impossible to determine, and probable profits would be incapable of estimation." In these words of the opinion may be found the features which distinguish that case from the case at bar. In that case there was no notice to the carrier of the amount of anticipated profits, or of the fact that profits were expected to be made. In the present case distinct notice was brought home to the carrier of the nature of the employment which the defendant intended to enter into, and the amount of the earnings which he could make with his horses in that employment.

It is said that the profits to be earned by the use of the horses in freighting over a mountain pass in the Arctic region, where they would have been subject to injury and death from exposure and from the dangerous nature of their work, where all the horses might have been lost in a single day, are too uncertain and speculative to have entered into the contemplation of the parties when making the contract. To this it may be said that the record is silent as to the hazards of using horses in the work for which these were intended. The only information we have is that the horses could have been used during the period of delay for the purpose of carrying freight, and that the value of their use would have been as stated in the evidence. As so stated, the profits which might have been realized are not more speculative or uncertain than those which have generally been allowed in the estimate of damages in the cases above cited. In Simpson v. Railroad Co., Cockburn, C. J., said:

"As to the supposed impossibility of ascertaining the damages, I think there is no such impossibility. To some extent, no doubt, they must be matter of speculation, but that is no reason for not awarding any damages at all."

The lowest estimate of the profit of the horses was $20 per day for each horse. The jury, by their verdict, allowed profits at $11.60 per day. We find no error in the ruling of the court. The judgment is affirmed.