HARRINGTON *v.* BLOHM.

Opinion delivered November 4, 1918.

1. CONTRACT — CONSTRUCTION — EJUSDEM GENERIS RULE. — Where a land owner obligated himself to furnish to a share cropper a well and machinery to irrigate certain land by the first of June, but failed to dig the well and install the machinery until August, by which time the rice crop was greatly damaged, the land owner was not relieved from liability by a stipulation that he was "to be held in no way liable for the lack of water owing to accidents or deficiencies to the wells or other machinery *or for any other reason whatever;*" the clause italicized referring to reasons similar to those mentioned.

2. DAMAGES—BREACH OF CONTRACT.—Where a land owner contracted to dig a well and install pumping machinery by June 1, he is liable for the damages caused by his failure to comply with his contract, though he used his best endeavors to do so.

3. DAMAGES—PROSPECTIVE PROFITS.—Where the evidence shows that an irrigated rice crop is free from the hazards incident to other crops dependent on weather conditions, the damages for failure to furnish the facilities for irrigation are not too remote and speculative to sustain a recovery.

4. DAMAGES—BREACH OF CONTRACT—MEASURE.—Where a landlord is sued for damages caused by his failure to furnish to a share cropper in due time means to irrigate a rice crop, and the testimony shows what the probable value of the crop would have been if such means had been furnished, the measure of the share cropper's damages is what his share would have been worth with irrigation, less the value of his share of the crop actually raised and the cost of producing and marketing same.

Appeal from Arkansas Circuit Court; *Thos. C. Trimble,* Judge; affirmed.

*John L. Ingram,* for appellant.

1. Appellant is not liable because the damages sued for are remote and speculative.

2. If appellee's theory as to damages is correct then appellant is protected against them by the contract. 1 Suth. on Dam. (3 Ed.) 140; 64 Ark. 510; 83 *Id.* 47; 122 *Id.* 23; 96 *Id.* 78; *Johnson* v. *Inman,* 134 Ark. 345; 59 Atl. 31; 104 Pac. 930; 28 S. E. 106; 4 S. W. 687; 73 S. E. 70; 12 L. R. A. 125; 18 Tenn. 20, 23, 26; 12 L. R. A. 125.

*Geo. C. Lewis,* for appellee.

The damages are not remote or speculative and the contract does not protect appellant from liability. 94 Ark. 471; 93 *Id.* 501; 6 R. C. L. 836; 95 Ark. 114; 73 *Id.* 600; 67 *Id.* 156; 74 *Id.* 534; 13 C. J. 537; 134 Wis. 603; 97 Ark. 531; 122 *Id.* 23; 91 *Id.* 433; 80 *Id.* 228; 13 Cyc. 53; 78 Ark. 336; 71 *Id.* 408; 91 *Id.* 212; 56 *Id.* 612; 76 *Id.* 542; 89 *Id.* 518; 98 Pac. 138; 19 L. R. A. (N. S.) 938; 85 Ark. 111.

SMITH, J. This cause was tried in the court below on an agreed statement of facts, from which we copy the following controlling recitals: The parties litigant contracted in writing for the cultivation of seventy-five acres in rice, and pursuant to this contract "the plaintiff entered upon the land described in the contract and plowed and seeded seventy-five acres of said land to rice, and did other work in connection with growing a rice crop, all of a reasonable value of $375." That, in order to successfully raise a rice crop, it is necessary to drill a well and install a large amount of expensive machinery of sufficient capacity and power to keep the land sown in rice flooded with water all during the growing season, and this the defendant agreed to do; and that said pumping plant, in order to make a crop, should be equipped and ready for operation not later than June 1 of the crop year. That the defendant failed to install the pumping machinery on

said land until in August of said year, and too late to bring to maturity the crops seeded on said land. That a fair average crop of rice which should have been and would have been grown on said seventy-five acres of land, if same had been properly irrigated, is fifty bushels per acre, or 3,750 bushels—such having been the average yield of neighboring farms for that season, and that one-half thereof would have belonged to the plaintiff. That the fair market value of said rice at maturity was and is $2 per bushel. That because of defendant's refusal to install a proper well and irrigating machinery by June 1, plaintiff was able to grow and mature only 150 bushels of rice. That rice growing is by far the most profitable agricultural industry in that part of Arkansas County, in which said land is situated, and that the prospect of growing a rice crop was the primary reason which induced plaintiff to enter into the lease contract in question; and that the growing of other crops was merely incidental. That in entering into said lease contract and expending his time, labor and money, in planting said crop, plaintiff relied upon defendant's agreement to install the necessary well and pumping machinery, and would not otherwise have entered into said lease or have attempted to grow said crop, and could not procure water elsewhere. That it would have cost plaintiff $850 to grow, harvest, thresh and market said crop, and that his net damage is $2,900. That the capacity of said well, when finally completed, was sufficient to irrigate the land sown in rice. That defendant contracted for a well and pump on said premises with the Layne & Bowler Company, on February 17, 1917. That said company is considered a reliable concern, and has put down most of the wells in the rice district of Arkansas County. That he contracted for a boiler and fixtures on March 24, 1917. That he had the engine when the lease contract was entered into, and that he used his best endeavors to get said well and machinery installed before June 1 of said year, and that the failure to do so was no fault of defendant.

Upon consideration of this testimony, the court rendered judgment for plaintiff for $2,690, being the amount sued for less an offset of $210, and this appeal has been duly prosecuted.

Appellant contends he is not liable in this case for two reasons. First, that, if appellee's theory as to said damages is correct, then appellant is protected against them by the contract. Second, because the damages sued for are remote and speculative.

The first defense is based upon the following clause of the contract: "Said first party (the defendant) shall furnish the well and machinery in good operating condition, and shall pay for the repair of parts which may be necessary on account of breakage, but second party shall otherwise keep the machinery in good and satisfactory repair. The first party is to be held in no way liable for the lack of water owing to accidents or deficiencies to the wells or other machinery, or for any other reason whatsoever." The contract is a lengthy one, and covers several pages of the brief, and other portions of it prescribe certain reciprocal duties in the way of furnishing wood and coal and oil and twine and other essentials, and provides for the employment of an engineer.

The contract does provide that "the first party is to be held in no way liable for the lack of water owing to accidents or deficiencies to the wells or other machinery, or for any other reason whatsoever." But we cannot agree with learned counsel for appellant that this language was intended or should be construed to exempt the appellant (the party of the first part) from liability for damages from any breach whatsoever of the contract. Such a construction of the contract would absolve appellant from any liability for failure to perform any of the obligations which he has assumed, and it is altogether unlikely that any such result was intended when we consider the large expense each party would necessarily have to make to perform his part of the contract. Each party to the contract must have assumed that the other intended to perform his part. And it is not likely that one of the

parties, while binding himself, would at the same time and in consideration of reciprocal promises have released the other party from any binding obligation to perform such promises.

The rule of *ejusdem generis* applies to and limits the phrase "or for any other reason whatsoever" to the particular exemption from liability immediately preceding, so that the exemption sentence should be read as though written, "the first party is to be held in no way liable for lack of water owing to accidents or deficiencies to the wells or well machinery, or for any other like reasons whatsoever." *State ex rel.* v. *K. C. & M. R. & B. Co.,* 106 Ark. 253, and cases there cited.

The reason of the rule is stated by the Supreme Court of Wisconsin in the case of *Hoffman* v. *Eastern Wis. Ry. & Light Co.,* 134 Wis. 603, 115 N. W. 383, as follows: "The rule contended for, that particularization followed by a general expression will ordinarily be restricted to the former, is based on the fact in human experience that usually the minds of parties are addressed specially to the particularization, and that the generalities, though broad enough to comprehend other fields if they stood alone, are used in contemplation of that upon which the minds of the parties are centered. It is the foundation of the whole rule *'noscitur a sociis.'* "

In support of its second position that the damages are remote and speculative, it is argued that it could not have been contemplated that appellant would be required to do more than to make an honest effort, in good faith, to furnish the necessary pumping machinery, and that he had "used his best endeavors to get said well and machinery installed before June 1, of said year, and that the failure to do so was no fault of defendant's." But appellant did not contract merely to use his best endeavors. His contract was to install the machinery by June 1, and the agreed statement of facts recites the disastrous effects to the rice crop from a failure in this respect, and these consequences were necessarily in the contemplation of the parties when the contract was executed. *Ford*

*Hardwood Lbr. Co.* v. *Clement,* 97 Ark. 522; *Hurley* v. *Oliver,* 91 Ark. 427.

Nor can we agree with learned counsel for appellant that the damages recoverable are too remote and speculative to sustain a recovery. The agreed statement of facts supports the contrary finding made by the court below. It would appear that an irrigated crop is singularly free from the hazards of other crops dependent on weather conditions. The record affirmatively discloses that rice growing presents opportunities for unusual profits.

It is finally insisted that the court applied an erroneous measure of damages under the facts in this case, but we cannot agree with counsel in this contention. The case of *St. L. S. W. Ry. Co.* v. *Morris,* 76 Ark. 542, was a suit for damages to land planted in cotton, which was damaged by having water thrown upon the land. The trial court instructed the jury that the measure of the damages would be the difference between what the land would otherwise have produced and what it actually produced. This instruction was condemned as defective in failing to instruct the jury to allow or deduct the difference between the cost of production and gathering and baling of a full crop of cotton and the crop actually produced.

No other appropriate rule for measuring the damages in this case could be approved, as we have here no question of the rental value of lands which could not be cultivated, together with expense incurred in the attempt to cultivate them. This, because appellee was not entitled to the rental value of the land. Any rental value which the land may have had belonged to appellant. The value of appellee's interest depended on the value of the crop raised and the cost of making and gathering it, and this was the measure of damages applied by the court below. Now an immature crop may have no value as such. Indeed, it may be an expense until it has attained its fruition, but its value at harvest time may be taken into account to determine its value at the time of its destruc-

tion or damage, and it would be proper to take into account all the circumstances existing at that time, as well as at any time before the trial, favoring or rendering doubtful the conclusion that the crop would attain to a more valuable condition of supposed growth or appreciation. *Railway Company* v. *Yarborough,* 56 Ark. 581.

Now the testimony shows that with the water which ought to have been supplied, had appellant complied with his contract, there would have been a yield of 3,750 bushels, worth $2 per bushel, whereas, because of this failure, there was an actual yield of only 150 bushels, and that to have grown, harvested, threshed and marketed the crop that should have been grown, would have involved a cost of $850. The ascertainment of the damages under the rule announced in the case of *Railway Company* v. *Morris* and *Railway Company* v. *Yarborough,* becomes, therefore, a mere mathematical calculation, and, as the calculation was properly made, the judgment must be affirmed.

The annotated case of *Smith* v. *Hicks,* 98 Pac. 138, 19 L. R. A. (N. S.) 938, is cited in the brief and announces the measure of the damages for breach of contract to furnish water to irrigate growing crops so that they became worthless, is the value of the crops on the market at maturity, less the cost necessary to put them in condition for and upon the closest market. There is an extensive review of the authorities in this case, with the annotation. The case of *Candler* v. *Washoe Well Reservoir & Galena Ditch Co.,* 6 A. & E. Ann. Cas. 946, which deals with the same subject, contains an extensive case note where many authorities are cited, to which reference may be had for a collection of cases on the subject. Judgment affirmed.