# CASES .

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS, THE DISTRICT COURTS, AND THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

### FAIRBANKS, MORSE & CO. v. AUSTIN et al.

(Circuit Court of Appeals, Ninth Circuit. March 15, 1923. Rehearing Denied May 14, 1923.)

#### No. 3941.

Sales ⬅418(14)—Special damages held recoverable for breach of contract for delivery of engine and pump for irrigation.

For breach by defendant of a contract to deliver by a specified time an engine and pump for irrigation purposes plaintiffs *held* entitled to recover, as special damages within the contemplation of the parties, damage to a crop of alfalfa and grass, and for permanent injury to the alfalfa, where defendant's agent, before making the contract, was taken over the farm, saw the growing alfalfa, and fully understood the need of irrigation by a certain time, in view of which the time for delivery of the machinery was fixed in the contract.

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Action at law by Levi P. Austin and Jay R. Austin, partners as Austin Bros., and others, against Fairbanks, Morse & Co., a corporation. Judgment for plaintiffs, and defendant brings error. Affirmed.

J. D. Campbell, of Spokane, Wash., and John B. Van Dyke and Josiah Thomas, both of Seattle, Wash., for plaintiff in error.

Eugene E. Wager, of Ellensburg, Wash., and James Collins Lloyd, of White Bluffs, Wash., for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The defendants in error were engaged in stock raising and general farming, mainly the cultivation of alfalfa. They recovered a judgment for damages against the plaintiff in error for its breach of a contract made on September 25, 1919, whereby it

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes .

288 F. —1

agreed to furnish and deliver to them by December 1, 1919, a certain oil engine pump, with accessories, to be used in irrigating their lands. The jury by a general verdict fixed the damages at $3,088, and by a special verdict apportioned $1,674 of the damages to loss of hay and $840 of the damages to permanent injury to crops. Judgment was rendered upon the general verdict.

The plaintiff in error assigns error to the denial of its motion that the judgment against it be entered for only $574, that being the amount of the general verdict, less the two items of special damages included therein. The contention on the writ of error is that, under the pleadings and the evidence, the defendants in error could not recover special damages, because such special damages were not within the contemplation of the parties at the time when the contract was entered into, and were too remote and speculative to be considered. The well-established rule announced in Hadley v. Baxendale, 9 Exch. 341, and generally followed in this country in both state and federal courts, is that, in addition to general damages, the injured party to a contract which is breached may recover special damages which arise from circumstances peculiar to the case, provided that those circumstances were communicated to or known by the other party at the time of making the contract, and may reasonably be supposed to have been in the contemplation of both parties. 8 R. C. L. 451, 459, 461, and cases there cited.

In the present case there was evidence that the plaintiff in error had reasonable notice of the conditions which rendered the damages which the defendants in error sustained the probable and natural result of its breach of the contract. Before the execution of the contract, Powell, the agent of the plaintiff in error, went over the lands of the defendants in error and discussed with them their problem of irrigation. He was told that their irrigation must begin by April 1st, and he assured them that there would be no delay in delivering the machinery in due time. It was fully understood that, in order to save the crops of the defendants in error, it would be necessary that the machinery be installed by the time so agreed upon. Relying on the promise of the plaintiff in error, the defendants in error sold to it their old pumping plant, thereby depriving themselves of means of irrigating their land.

During the period of time which followed after the date when the machinery was to have been delivered, the plaintiff in error received several letters from the defendants in error, to which it made no reply. One of the letters, of date March 12, 1920, contained the following:

"The delay and uncertainty upon your part in this matter is costing us a lot of money and leaving us in a position where we do not know what to do."

On March 30, 1920, the defendants in error wrote:

"We have 60 acres of alfalfa which should be irrigated at once, and in all probability (with all of our efforts in installing an outfit at this late hour) will lose the first cutting, besides some permanent injury to the alfalfa."

A case in point is Lillard v. Kentucky Distilleries & Warehouse Co., 134 Fed. 168, 67 C. C. A. 74, in which it was held that, where the

obvious purpose of an agreement for the sale of distillery slop was that it might be fed to fatten cattle, the failure of the seller to furnish the slop which he contracted to supply would entitle the buyer to re-- cover damages resulting from additional outlays for food or labor, or any other expense or injury to the cattle, including loss of anticipat- ed profits from the sale of the cattle, provided such profits could be shown with reasonable certainty, and were not purely speculative. In the opinion in that case Judge Lurton said:

"Special circumstances will justify a recovery of special damages when specifically sued for, if they proximately follow from the breach, and are such as might reasonably be within the contemplation of the parties."

In the leading case of Bixby-Theirson Lumber Co. v. Evans, 167 Ala. 431, 52 South. 843, 29 L. R. A. (N. S.) 194, 140 Am. St. Rep. 47, it was held that, where the special and ulterior purposes of a par- ty in making a contract is disclosed to the adverse party at the time, they become an element of the duty imposed on the adverse party, and afford a substantial basis for special damages. In Lonergan v. Wal- do, 179 Mass. 135, 60 N. E. 479, 88 Am. St. Rep. 365, it was held that, where the purchaser of pipe notified the seller that, if it were not delivered at once, there would be danger of the caving in of the ditch, which the former was excavating, and the seller agreed to de- liver the pipe at once, without notifying the purchaser that he would not be liable in any event for damages to the ditch, it was an implied agreement to assume the special liability which would render the sell- er liable for damages to the ditch caused by his negligence in failing to deliver the pipe. The court said:

"When the special circumstances are known to both parties, it is obvious that each may have contracted with reference to them, and that, if such was in fact the case, the party in fault may be held justly to make good to the other whatever damages he has sustained, which were the reasonable and natural consequences of a breach under the circumstances so known, and with reference to which the parties acted."

. Among the federal cases applying the doctrine of Hadley v. Bax- endale [1] are Boutin v. Rudd, 82 Fed. 685, 27 C. C. A. 526; Mott v. Chew (C. C.) 137 Fed. 197; McDonald v. Kansas City Bolt & Nut Co., 149 Fed. 360, 79 C. C. A. 298, 8 L. R. A. (N. S.) 1110; and it was followed by this court in Port Blakely Mill Co. v. Sharkey, 102 Fed. 259, 42 C. C. A. 329.

The plaintiff in error relies upon Globe Refining Co. v. Landa Cot- ton Oil Co., 190 U. S. 540, 23 Sup. Ct. 754, 47 L. Ed. 1171, and Steb- bins v. Selig, 257 Fed. 230, 168 C. C. A. 314. Both were cases in which the sufficiency of the complaint for damages was tested on de- murrer, and both were actions upon written contracts. In the first case it was held that in case of breach of contract the defendant can be held responsible only for such consequences as may reasonably be supposed to be in contemplation of the parties at the time of making the contract, and that mere notice to a seller of some interest or prob- able action of the buyer is not enough necessarily, and as a matter of law, to charge the seller with special damages on his failure to de- liver the goods. The court, in disposing of the demurrer, applied

[1] 9 Exch. 341.

the test question, whether from the allegations of the pleadings it appeared that the defendant in entering into the contract contemplated the liability for damages which the plaintiff asserted, and intimated that knowledge "must be brought home to the party sought to be charged, under such circumstances that he must know that the person he contracts with reasonably believes that he accepts the contract with the special condition attached to it," quoting from British Columbia Sawmill Co. v. Nettleship, L. R. 3 C. P. 499. We find nothing in the opinion which would lead to reversal in the present case.

In Stebbins v. Selig, in an action for breach of a written contract by defendant to drill an artesian well and install a pump therein for irrigation purposes within 20 days, damages to a rice crop on the land which the well was intended to irrigate, based upon the difference of the rice crop actually raised and the rice crop raised on adjoining land, resulting from breach of the contract, were held not recoverable as special damages, in the absence of a provision in the contract that such damages were contemplated. In that case the complaint alleged that the plaintiff's only means of irrigation would be the said well and pump, and that the defendant well knew that fact.

The present case differs from that in important particulars. Here the contract was entered into six months before the time when the irrigation season was to commence, as the plaintiff in error well knew. It was not a contract to perform labor, or to manufacture machinery, but was a contract of sale and delivery of certain specified machinery, which the plaintiff in error, through its agent, recommended for the needs of the defendants in error. The contract was entered into and signed by the agent after he had gone over the land to be irrigated and discussed the problem of its irrigation. He not only saw the land, but also saw the growing crops, and he knew that the defendants in error were utterly dependent upon the plaintiff in error to furnish machinery to save their crops. There is the further difference that the contract in the Stebbins Case had reference to a crop thereafter to be raised, whereas in the case at bar the contract related to crops in existence and growing at the time when the contract was to be performed. In these two classes of cases different measures of damages prevail. Smith v. Hicks, 14 N. M. 560, 98 Pac. 138, 19 L. R. A. (N. S.) 938. The damages which in the present case the defendants in error sustained resulted from the destruction of their growing crops of alfalfa and grass. Such damages are uniformly recognized as recoverable for the breach of contracts such as that which is here involved. Harrington v. Blohm, 136 Ark. 231, 206 S. W. 316; Chandler v. Washoe Lake Reservoir, etc., Ditch Co., 28 Nev. 151, 80 Pac. 751, 6 Ann. Cas. 946; Smith v. Hicks, supra; Teller v. Bay & River Dredger Co., 151 Cal. 209, 90 Pac. 942, 12 L. R. A. (N. S.) 267, 12 Ann. Cas. 779. In Shelley v. Eccles (C. C. A.) 283 Fed. 361, the court which decided the Stebbins Case gave expression to views of the law which, if applied to the present case, lead to the conclusion which we have reached herein.

The judgment is affirmed.

ROSS, Circuit Judge (dissenting). It appears from the evidence that the contract was made by the defendant company, through its traveling agent, Powell, with Austin Bros. Levi Austin testified that Powell went over their land with him, and that he went over with Powell their irrigation problem; that they went into the details of the old plant, which was not satisfactory, according to the witness, "for even the acreage we had in then, and we wanted to put in more acreage, and we went into details as to the different lifts and the amount of water required, and he (Powell) proposed this 25 horse power outfit connected to an 8-inch pump would be exactly what we would want for this condition and the amount of water." We told him, said the witness, "our problem there for irrigation, and at this time the outfit we had there was not satisfactory; we could not get enough water, and we told him that we must make a change of some kind, and asked what he would recommend to fit our purpose, and he proposed that we take at least a 25 horse power engine and connect it to this 8-inch pump, and later on, if we cared to put in a larger pump, this 25 horse power outfit would furnish the power." The witness further testified, in effect, that he told Powell it would be necessary to have the machinery contracted for delivered about December 1st, to give ample time for its installation, as they wished to commence pumping by the 1st of April, 1920, and that such was the understanding.

Jay Austin, the other member of the firm of Austin Bros., testified that, at the time of entering into the contract, they had 25 acres of upland and between 15 and 20 of the lower flat in alfalfa, and that with their old plant the usual time of commencing their irrigation was about the 1st of May, for the reason that the well from which the water was then obtained was not deep enough to supply water before that time; that in the early spring of 1920 the ground was in good shape, and that because of the defendant company's failure to comply with its contract it was May 20, 1920, before they could get any water for the irrigation of their alfalfa; and there was testimony given, over the objections and exceptions of the defendant company, as to the resulting loss of the plaintiff's alfalfa, and as to the dying out of some of it. I do not, however, find in any of the evidence any fact testified to which, in my opinion, can be fairly said to have informed the plaintiff in error or its agent, Powell, that either party to the contract contemplated that a breach of it on the part of the company would subject the latter to damages for the loss of crops afterwards to be planted or that were then growing, the extent of which, so far as appears, was unknown to it. If such a liability had been suggested, it cannot be doubted that the plaintiff in error would have refused to have entered into the contract; and certainly its sales agent, Powell, is not, by the record, shown to have been authorized to incur on its behalf any such liability. Yet it is the well settled law that in case of a breach of contract "a person can only be held to be responsible for such consequences as may be reasonably supposed to be in the contemplation of the parties at the time of making the contract." Globe Refining Co. v. Landa Cotton Oil Co., 190 U. S. 540, 544, 23 Sup. Ct. 754, 755 (47 L. Ed. 1171), and cases there cited.

The recent decision of the Circuit Court of Appeals of the Eighth Circuit—Stebbins v. Selig, 257 Fed. 230, 168 C. C. A. 314—was largely based upon that decision of the Supreme Court. The decision in Stebbins v. Selig was a far stronger case for the plaintiff in error there than is the case of the plaintiffs below in the present action; for there, as appears from the allegations of the complaint upon which the decision was based, the well and pump the defendant to the action agreed to sink and install for the plaintiff was known and understood by both parties to the contract to be for the sole purpose of keeping the plaintiff's land flooded for the growing of rice thereon; that the regular business in which the defendant was engaged was the sinking of wells and the furnishing of pumps for water for rice fields, and that the defendant well knew that the successful cultivation of that article required that the land upon which it is grown should be kept flooded; that by reason of the failure of the defendant to perform his agreement the plaintiff was obliged to get another company to sink the needed well and install the needed pump at an excess cost of $675, and that in consequence of the delay in thus obtaining the needed water the plaintiff's crop of rice was reduced, to his damage in the sum of $3,500, for which he prayed judgment. The Court of Appeals said:

"In considering the question of special damage, we must remember that the contract between the parties was in writing and contained no expression as to what the damages should be in case either party wholly failed to perform it. The general rule is that a person can only be held to be responsible for such consequences as may be reasonably supposed to be in the contemplation of the parties at the time of making the contract. Under this rule, the plaintiff in the present case could clearly recover in the proper forum the sum of $675, which he alleges was the excess paid to the Layne & Bowler Company for doing the same work that the defendant agreed to do. Parties, when they make contracts, contemplate performance, not breach; therefore they do not usually say anything about consequences in case of breach by either party. In this situation the law establishes a rule by which it may be determined with reasonable certainty what the parties would have said, had they spoken in their contract. Thus arises the rule, above stated, that parties who break their contracts are to be held responsible for such consequences as may be reasonably supposed to be in the contemplation of the parties at the time of making the contract. The rule being thus established, the next question that arises is: How shall it be determined what the consequences were which the parties to a contract contemplated when they entered into the same? It has been decided that these consequences may be shown by oral evidence when the contract is in writing. It has also been decided that mere notice to a seller of some interest or probable action of the buyer is not enough necessarily and as matter of law to charge the seller with special damage on that account, if he fails to deliver the goods. As was said by Mr. Justice Willes in British Columbia Sawmill Co. v. Nettleship, L. R. 3 C. P. 499, 508: 'The knowledge must be brought home to the party sought to be charged, under such circumstances that he must know that the person he contracts with reasonably believes that he accepts the contract with the special condition attached to it.' In this case the special condition would be that defendant entered into the contract in question, knowing that the plaintiff reasonably believed that, if the defendant wholly failed to perform the contract, he would be liable to the plaintiff for the difference between the value of the rice crop raised upon the plaintiff's land and the value of the rice crop raised upon any adjoining land; this difference amounting in the present case to $3,500. One way of testing whether the defendant contemplated this consequence is to suppose that, had defendant been asked to agree to a clause in the contract that would make him liable in the way specified, would he have

assented to the same? In our judgment there can be but one answer to this question: He would not."

Much less, I think, can it be properly held that the plaintiff in error in the present case, by agreeing to sink the well and install the pump here in question, understood or contemplated that by reason of its failure to do so it was subjecting itself to liability for all or any loss to the alfalfa plants themselves. In this connection, it is to be observed that a witness for the plaintiffs testified:

"I live in Yakima, and am an irrigation or electrical engineer. I have been an electrical engineer for 15 years and an irrigation engineer for 11 years. I have lived in Yakima for 11 years. I know the land owned by plaintiffs. I have been over and across these lands at various times. I am familiar with the soil conditions on these lands. They are composed of what we know as Ephrata fine soil, mixed with gravel, with emphasis on the gravel. There is a difference in the amount of water necessary for such as that and land situated in the Yakima valley. Four times as much water as is needed in the Yakima valley is needed on the soil of the Austin place. On the pumping plant we figure the Yakima valley twice what we have for gravity and on the Columbia river we double up on that."

It is not pretended that the defendant, or its sales agent, Powell, had any information, at the time of or before the making of the contract in question, regarding any excess of water required by the plaintiff's land over the ordinary, nor, indeed, as has already been mentioned, does it appear that the plaintiff in error, or its agent, Powell, had any specific or definite information regarding the future planting of alfalfa by the plaintiffs, nor, indeed, any specific information respecting its then existing planting—indeed, nothing, in my opinion, upon which it can be reasonably supposed that the plaintiff in error could have contemplated that, by entering into the contract for the sinking of the well and the installation of the pump, it was rendering itself liable for any special damage, or any other damages beyond the ordinary damages that might result from a breach of the contract on its part.

I think the judgment should have been for the plaintiffs for $574 only, with costs.