Beeble *v.* Arkansas Light & Power Company.

Opinion delivered November 8, 1926.

1.  Appeal and error—jury question.—To determine whether a cause should have been submitted to the jury, the Supreme Court will view the testimony in the light most favorable to the party against whom the verdict was instructed.

2.  Damages—notice of special damages.—Evidence *held* sufficient for the jury on the issues whether plaintiff gave defendant sufficient notice that they would be entitled to special damages for defendant's failure to furnish an adequate motor to irrigate plaintiff's rice fields and whether defendant showed that plaintiffs had failed to do all in their power to minimize the damages.

Appeal from Arkansas Circuit Court, Southern District; *George W. Clark,* Judge; reversed.

*John W. Moncrief,* for appellant.

*John L. Ingram,* for appellee.

Humphreys, J. Appellants instituted this suit against appellee, in the circuit court of Arkansas County, to recover damages in the sum of $8,795.80 to a rice crop of 119.8 acres grown in the year 1924, for failure to comply with a contract to furnish a 15-horse-power motor capable of producing power sufficient to pump 1,500 or 1,800 gallons of water per minute to irrigate the rice. The complaint alleged a breach of contract to furnish power as well as a motor, but the undisputed proof disclosed that the power lines were completed within the time specified in the contract, so only the allegations relative to the contract of the motor and the failure to furnish same will be mentioned in setting out the substance of the complaint.

The complaint, in substance, alleged that appellee entered into an oral contract with appellants to furnish and rent them a 15-horse-power electric motor, capable of furnishing water for said rice, and to install same; that appellee, with full knowledge of the purpose for which said motor was desired, advised appellants that a 15 horse-power motor was capable of furnishing power sufficient to pump the necessary water to irrigate said 120-acre tract of growing rice; that appellee was advised

of the purpose for which appellants wanted said electric motor, and with this knowledge, and while knowing the consequences of a failure on its part to furnish and install a capable motor in ample time to irrigate said field, entered into a contract with appellants, for a valuable consideration, to furnish an electric motor in time to irrigate the rice, but, in violation of its contract, failed to furnish a motor that would supply the necessary water; that it furnished a motor with which appellants were unable to water the rice, thereby causing the greater part of the crop to burn and die.

Appellee filed an answer, denying the material allegations of the complaint.

The cause was submitted upon the pleadings and evidence, and, at the conclusion of the testimony, the court instructed a verdict in favor of appellee, over appellant's objection and exception, from which is this appeal.

The court peremptorily instructed a verdict upon the theory that appellants failed to give appellee sufficient notice that they would be entitled to special damages upon its failure to furnish the electric motor; and because appellants made no effort to minimize their damages when appellee breached the contract.

Appellee contends for an affirmance of the judgment upon the theory that the testimony brings the case within the general rule announced in *Barry-Wehmiller Machinery Co.* v. *Thompson,* 83 Ark. 283, to the effect that "the measure of the damages for breach by a vendor of a contract of sale of a chattel is the difference between the article agreed to be furnished and the one furnished, or, if the one furnished was not fit for practical use, the cost of procuring an article of the kind agreed to be furnished;" and the rule announced in the cases of *Beekman Lumber Co.* v. *Kittrell,* 80 Ark. 228, 96 S. W. 988, and *Young* v. *Berman,* 96 Ark. 78, 131 S. W. 62, to the effect that "a party injured by a breach of contract must make reasonable effort to prevent or reduce the damages; and where he can, by reasonable exertion or

expense, arrest the loss caused by such breach, the measure of damages is the amount of such expense.''

Appellants contend for a reversal of the judgment upon the theory that the testimony brings the case within the general rule announced in *Miles* v. *American Railway Express Company,* 150 Ark. 114, 233 S. W. 930, to the effect that ''where two parties make a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach should be such as may fairly and reasonably be considered either as arising naturally from the breach of the contract or as having been in contemplation of both parties at the time they made the contract, as the probable result of a breach of it. In determining what damages were contemplated by the parties to a contract, it is proper to consider the nature and purpose of the contract and the attending circumstances known to the parties at the time the contract was executed, and the damages should be awarded which might reasonably have been expected to follow from a breach of the contract;'' and within the rule announced in 4 Enc. of Evidence, page 10, to the effect that ''it is for the alleged wrongdoer to show any facts and circumstances in mitigation of damages.''

In classifying the instant case, appellants are entitled to the most favorable construction which can be placed upon the evidence, the rule being that, in determining whether the cause should have been submitted to a jury, the Supreme Court will view the testimony in the light most favorable to the party against whom the verdict has been instructed. The evidence, viewed in its strongest aspect for appellants, is as follows: Appellants had planted 119.8 acres of rice in said county, near a bayou where ample water could be secured for irrigation purposes. The stand was good, and free from grass and weeds. They decided to use electric motor power for pumping purposes, instead of pumping water out of the bayou over the rice field with steam or oil engines, provided they could get the electric power and motor from appellee. Appellee was engaged in the business of fur-

nishing electric power and motors to rice farmers in that section of the State. On June 19, 1924, W. N. Beeble, acting in behalf of appellants R. W. Beeble and J. L. Cartmell, entered into a conditional oral contract with Edward Donan, superintendent of appellee, to supply them with electric power and a motor capable of furnishing from 1,500 to 1,800 gallons of water per minute to irrigate the rice. Donan was informed by W. N. Beeble of the existing conditions and the immediate need of water, as well as the quantity required. The tentative contract was not to be closed until Donan, who was familiar with rice culture in that section, could visit the farm and by personal inspection familiarize himself with the conditions, and by calculations determine the amount of power and the size of the motor necessary to pump 1,500 to 1,800 gallons of water per minute. After making a personal inspection and the necessary calculations, he advised Beeble that a 15-horse-power motor would do the work, and stated that appellee had two motors on hand, one a 15-horse-power and the other a 25-horse-power, and that, if the smaller one would not do the work, appellee could replace it with the larger one. The oral contract was then closed, with the understanding that the power lines should be completed and the motor installed by the following Tuesday. Appellants paid $50 at the time on the motor contract, which was a rental contract for $225 for the season, with the privilege or option to purchase it by paying $350 instead of the rent. Appellee began to construct the power lines to the farm at once, and did not complete them until July 1, and did not install the electrical motor until July 9, although the agent of appellants had urged appellee almost daily, after the completion of the power lines, to install the motor. Appellee put off the installation of the motor from day to day, finally admitting that he had used the motor intended for appellants to replace one which appellee had burned out on another farm, and that it had sent the motor which it had burned out away for repairs, and was sure that it would be back immediately. When it

was returned on the 9th, appellee installed a 15-horse-power motor, but, when tested, it would not pump any water at all. Appellee immediately removed it for the purpose of having it repaired, and, on the 12th day of July, substituted, temporarily, a 10-horse-power motor. About this time appellee required appellants to sign a written contract for the electric power covering a period of years. The 10-horse-power motor which had been substituted until appellee could get the first motor repaired, had capacity to pump only 400 gallons of water per minute, and this amount would only supply sufficient water to irrigate about 30 acres of rice. The necessity of immediate action on the part of appellee was urged by appellants almost constantly, and the superintendent promised from day to day to get the 15-horse-power motor repaired, and finally got it back, but discovered it had been wound the wrong way and could not be used. On the 15th of July, during this period of delay, appellee suggested that it install a 25-horse-power motor, which appellants agreed that it might do, whereupon it took a note from them for the price of the large motor. It then failed to install the large motor until July 25, although urged constantly by appellants to install same, and although it was promising from day to day to do so. When the larger motor was installed, on July 25, it was discovered that the rice on two-thirds of the land had burned up and could not be revived by irrigation. W. N. Beeble testified positively and unequivocally that Donan knew what the result would be if the motor furnished them failed to pump the necessary water on the rice. He further testified that it was discussed and known by both parties that appellants would lose the whole crop unless sufficiently irrigated. He also testified that appellants relied upon the promise of appellee to furnish the motor and its further promise from day to day to install same, until it was too late to provide other means for supplying necessary water for irrigation. He also testified to the damages sustained on account of the breach of the contract.

We think the testimony detailed above brings the case within the rules contended for by appellants, and that the evidence was sufficient to warrant a submission of the cause to the jury upon the issues of notice necessary to recover special damages, and whether appellee met its burden to show that appellants failed to do all within their power to mitigate the damages.

The testimony strongly tended to show that appellee contracted with appellants to furnish a 15-horse-power motor capable of pumping 1,500 to 1,800 gallons of water per minute to irrigate the growing rice crop upon 120 acres of land, and that it made this contract with the knowledge that, if the motor failed to do so, the crop would be destroyed. It refused to rely upon the representations made by the agent of appellants concerning the conditions and situation existing upon the farm, and made its own calculations as to the size and character of the motor needed, after a personal inspection.

The testimony also tended to show that appellants relied upon the promises of appellee from day to day that it would install a motor of the size and character necessary to pump sufficient water to irrigate and mature the rice crop, and that there was nothing they could do to save the crop after they realized that appellee had breached its contract.

Under our view of the law applicable to this case, the court erred in instructing a verdict against appellants, and for that reason the judgment is reversed and the cause is remanded for a new trial.

Mr. Justice SMITH dissents.