LAYNE-ARKANSAS COMPANY *v.* SEEMAN.

Opinion delivered May 9, 1927.

1. SALES—DEFECTIVE MATERIAL FOR REPAIRING.—Where the buyer of a pump himself furnished the material which was used to make the seal, he could not recover from the seller for damage to his rice crop, resulting from insufficiency of water supply, on the ground that the material used in making the seal was defective.

2. SALES—DUTY TO MINIMIZE DAMAGES.—Where the seller of a pump for water for a rice crop refused or neglected to repair it as required by its contract, the buyer was bound to have the repairs made by others in order to minimize the damage to his crop.

3. SALES—DAMAGES FOR DELAY OF MAKING REPAIRS.—The seller of a water pump who agreed to keep it in repair was not liable for damages to the buyer's rice crop, resulting from the seller's delay in repairing the pump where the buyer did not give any notice to the seller that he would suffer special damages from delay, if such damages were not within the contemplation of the parties.

4. SALES—DAMAGES RECOVERABLE UNDER CONTRACT.—Under a contract for the sale and installation of a water pump and motor, providing that any material proving defective would be replaced, and that no claim for labor or damages would be allowed, the buyer could not recover damages for delay in repairing the pump resulting in injury to the rice crop.

Appeal from Arkansas Circuit Court, Northern District; *George W. Clark,* Judge; reversed.

*A. G. Meehan* and *John W. Moncrief,* for appellant.

*Joe Morrison* and *George C. Lewis,* for appellee.

McHANEY, J.  This is an action to recover special damages for the alleged breach of a contract for the sale and installation by appellant of a pump and motor to operate on the rice farm of appellee.  The written contract is as follows:

"Layne-Arkansas  Company

Irrigation Well Contractors Irrigation Supplies

State Agents Bessemer Crude Oil Engines

Stuttgart, Arkansas.

We guarantee Water or no Pay.

A duplicate in all cases to be retained by the customer.

"All orders accepted by us subject to delay in fulfillment on account of strikes, unavoidable accidents, or other causes beyond our control.  Any material proving defective when used for the purpose specified will be replaced during the pumping season of 1925, but no claim for labor or damages will be allowed.  All contracts and deliveries are subject to the acts of the Government in times of war or national emergency, or other causes beyond our control.

"Date 3/27/1925.

"Layne-Arkansas Company:

"Please ship me ct.

"One type LC-15-in. 4 stage Layne pump bowls

"One 30 HP. Westinghouse motor 3 phase

"220 volt-1160 R.P.M. 40° set and wired in and hand starter

"For which I will pay the net price of fifteen hundred sixty-eight 28/100 ($1,568 28/100) dollars.

"The terms of payment being 1/3 cash with order, 1/3 cash when set, cash and title-retaining note due 12-1-25 for remaining 1/3 all note to bear interest from date of invoice at rate of 8 per cent. per annum.

"Agreements regarding delivery and erection.

"I agree to_____:_____Layne-Arkansas Company agrees to set pump in well, motor set and wired and guaranteed pump to show an efficiency of 60 per cent. or better and meet condition of the Ark. Light & Power Co.

"This order contains all agreements concerning this sale.

"The express conditions of sale and purchase of the property for which the contract is given is such that the title, ownership and right of possession does not pass from the said Layne-Arkansas Company until the note or notes or any account that is given or made in connection with such machinery as described herein to said Layne-Arkansas Company are paid in full.

"Signed O. E. Seeman.

"Signed Fred T. Thayer, salesman.

"Notice to customers—Read this carefully, as this is the complete understanding regarding this order, and no verbal representations not written here are binding on either party."

Thereafter, in accordance with said contract, appellant installed said pump and motor, appellee paying for same in accordance with said contract, $500 with the order, $500 on the 8th day of June, 1925, the day said pump was installed, and executed on said date his note for the balance in the sum of $568.20 due December 1, 1925, with interest from date at 8 per cent. per annum. A necessary part of the pump is a seal, the installation of which is said to be sealing the pump. This is done by fastening a joint in the piping through which the pump brings the water, and consists of coarse sacking which goes down inside the joint upon which it rests, by means of which a vacuum is created. If the pump is not properly sealed it will leak air and thereby reduce the quantity of water. The seal in this case was made by appellant from old sacking material furnished by the appellee, who testified that he was present when the seal

was installed, and that he is familiar with the purpose of a seal, knows the importance of it, and knew what the effect of a defective seal would be, but did not know whether the seals are guaranteed or not. The pump was properly installed, and, when started up, it furnished an ample supply of water. But, after a few days operation the output was decreased, and appellee says that he advised an officer of appellant concerning the falling-off of the supply of water, and that such officer promised to attend to it, but did not do so. On the 26th day of June appellee had the Arkansas Light & Power Company make a test, as provided in the contract, and found that it was delivering about 30 per cent. efficiency instead of 60 per cent. as provided in the contract. He then notified appellant's manager at Stuttgart, Mr. Woodburn, on the 27th day of June, of the test made, and Mr. Woodburn sent a crew out at once and fixed the well up, put on a new seal without making any charge therefor, and that the pump has been working satisfactorily ever since. He thereafter, on the 28th day of January, 1926, brought suit against appellant for damages which he claimed he suffered by reason of the diminished production of his rice crop on account of the insufficient water supply for about two weeks, from the 14th to the 29th days of June, based on the alleged negligence of appellant in the installation of a seal when the pump was originally installed. Appellant demurred to the complaint, and, it being overruled, answered, denying the allegations of negligence and loss, and filed a cross-complaint on the above-mentioned note, asking judgment against appellee for the amount of the note and interest.

The case was tried by a jury, which resulted in a verdict and judgment against appellant in the sum of $1,200 less the unpaid note and interest, amounting at that time to $598.37, or a judgment over in the sum of $601.63. From the judgment against it the appellant has appealed.

At the conclusion of the testimony appellant requested the court to instruct the jury peremptorily in

its favor, both on the complaint and cross-complaint, which the court refused to do, and this assignment of error is brought forward in the motion for a new trial. Inasmuch as we are of the opinion that this assignment of error is well taken, it becomes unnecessary to discuss the other questions raised in the briefs. By the terms of the contract above set out, appellant agreed that "any material proving defective when used for the purpose specified will be replaced during the pumping season of 1925, but no claim for labor or damages will be allowed." The contract further contains this provision: "Layne-Arkansas Company agree to set pump in well, motor set and wired, and guarantee pump to show an efficiency of 60 per cent. or better and meet condition of the Ark. Light & Power Co." This action is based on a breach of the contract in that the material proved defective. The only material which proved defective was material furnished by appellee himself for the making of the seal, but he says he was present at the time and advised the employees of appellant that they were cutting the seal too small. The evidence conclusively shows, in fact it is undisputed, that a rice man of any experience will know immediately when the seal on a pump is taking air; that there are several tests by which this can be determined, one being by the bubbles of air in the water. Another is that, by throwing a shovelfull of dirt in the well, if the seal is leaking, muddy water will come back through the pump. It is undisputed that appellee is an experienced rice farmer, having been engaged in that business for many years, and testified himself that he was familiar with the seals on pumps, their purpose, importance, and the effect of a defective seal. Therefore, by the exercise of ordinary diligence, he could and must have known that the seal on his pump was leaking air. When· he advised appellant that his water supply was diminished, instead of having a test made by the Arkansas Light & Power Company to determine whether the efficiency of the pump was 60 per cent. or better, and instead of telling them that there was a leak in the seal, he simply

told them that he was not getting enough water. He does not contend that he gave them any notice at that time that his rice crop would be damaged unless the supply was increased, nor did he advise them that he would suffer special damages if immediate attention was not given it. He says Mr. Thayer, officer of appellant, told him the water level was low in all wells on account of the extreme dry weather in 1925, but appellee did not tell Mr. Thayer that the seal was defective. Shortly after this he had the test made, in accordance with the contract, and agrees that appellant immediately repaired, same at its own expense, and that he thereafter had no trouble with said pump. Moreover, the undisputed evidence shows that it would not have cost exceeding $80 to have pulled the pump and had same repaired. There were a number of competent people available to appellee for this purpose. It was his duty, if appellant had refused or neglected to repair the pump, to have engaged others to do so and thereby prevent or minimize damage he might sustain to his rice crop. As was said in the case of *Johnson* v. *Inman,* 134 Ark. 345-349, 203 S. W. 836:

"Unless the repairs required of appellant under the contract were extensive and costly in comparison with his rents, it was the duty of appellee to make them and prevent or reduce the damage under the rule announced in the case of *Young* v. *Berman, supra.*" The rule in that case, quoting from the syllabus, is as follows:

"A party injured by a breach of contract must make reasonable effort to prevent or reduce the damages; and where he can, by reasonable exertion or expense, arrest the loss caused by such breach, the measure of damages is the amount of such expense."

In *Selig* v. *Botts,* 128 Ark. 167, 193 S. W. 534, the court, in the opinion on rehearing, on page 172, used this language:

"We take occasion to say that the court properly refused to allow appellee to prove damages alleged to have been sustained to his rice crop as being indirect,

and not within the contemplation of the parties under the terms of the contract.''

This case was tried, as was the case of *Johnson* v. *Inman, supra,* on the theory that appellant breached the covenant for repairs, and that, without any effort on his part to make the necessary repairs, he was entitled to recover the difference between the value of the rice crop he raised and the value of the rice crop he might have raised but for the breach, and in that case this court said:

''The element of doubt is inherent in future profits in almost any character of business, and, on that account, courts are slow to adopt the profit rule as a measure of damages on account of contractual breaches, and will never do so if a more certain and definite rule can be fixed, and in no event will allow purely speculative damages. This court is committed to the doctrine that only compensatory damages will be allowed, and that one injured by the breach of a contract must prevent or reduce the damages by the exercise of reasonable effort or the expenditure of reasonable sums.''

The facts in this case are entirely different from those in *Harrington* v. *Blohm,* 136 Ark. 231, 206 S. W. 316, where the contract provided that Harrington should dig a well and install a pumping machine by June 1, and, on account of his failure to do so, he was held liable for the damages to the rice crop caused by his failure so to do. But in this case the pump was properly installed within the time agreed upon, and this action arises out of the alleged negligence in failing to repair, where the clause in the contract, with reference to such repairs, specifically provides that ''no claim for labor or damages will be allowed.'' This case also differs from the case of *Beeble* v. *Arkansas Light & Power Co.,* 172 Ark. 262, 287 S. W. 766, in which the alleged breach of contract was failure to furnish a motor of sufficient horse-power to pump necessary water to irrigate a 120-acre tract of growing rice. But in this case the contract is wholly different, as heretofore explained. The only guarantee appellant made was

that it should test out 60 per cent. efficient, and that, if any repairs were needed during the pumping season in 1925, it would make them, which it did immediately after being informed of the failure of the pump to meet the test agreed upon.    There is therefore no evidence in the record to justify the submission of this case to the jury, and the judgment against appellant will therefore be reversed, and appellee's cause of action dismissed.

On the cross-complaint there is no dispute about the amount due on the note which remains unpaid, and judgment will be entered here for the amount of the note and accrued interest.    It is so ordered.