Harold E. FERGER, William J. Norton, Patrick F. Norton, and Columbus P. Brittain, Plaintiffs,

v.

LOCAL 483 OF the INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS, AFL–CIO, Defendant.

Civ. A. No. 316–62.

United States District Court
D. New Jersey.

May 7, 1964.

Bracken & Walsh, by John J. Bracken, Newark, N. J., for plaintiffs.

Parsonnet & Parsonnet, by Thomas L. Parsonnet, Newark, N. J., for defendant.

MEANEY, District Judge.

This is an action brought by Harold E. Ferger, William J. Norton, Patrick F. Norton and Columbus P. Brittain, plaintiffs, against Local 483 of the International Association of Bridge, Structural and Ornamental Iron Workers, AFL–CIO, defendant.

The action is brought under Section 102 of the Labor-Management Reporting and Disclosure Act (hereinafter referred to as LMRDA) (29 U.S.C.A. § 412) which authorizes suits in the United States District Courts for violations of the provisions of the LMRDA.

The plaintiffs allege that (1) they are members in good standing of the International Union as a result of membership in various locals of the International other than Local 483; (2) that for many years they have secured and performed work within the jurisdiction of Local 483, with that Local's knowledge and consent and have paid to the Local fees demanded by it; (3) that in March, April and May of 1960, or thereabouts, plaintiffs requested transfers from their original locals to Local 483; (4) that the requests were made in accordance with the Inter-

national's constitution and Local 483 is required thereby to permit the transfer; (5) that Local 483 has refused to permit the transfer; (6) that plaintiffs have appealed this action to the International in substantial accordance with the constitution, but the International has failed and refused to act and more than four months have expired since such failure and refusal; and (7) that, as a result, plaintiffs have been denied rights guaranteed to them by the LMRDA.

■ That such an action does lie under the LMRDA against a union for its refusal to accept a transfer of membership from another local of the same international was decided by the 3rd Circuit Court of Appeals in Hughes v. Local No. 11 of International Association of Bridge, etc., 3 Cir., 287 F.2d 810, and reiterated in Tomko v. Hilbert, 3 Cir., 288 F.2d 625, at p. 630.

As relief the plaintiffs ask that the court enter judgment obligating Local 483 to grant them the rights pertaining to membership in that Local.

The defendant, Local 483, bases its defense in the present action on three grounds: (1) plaintiffs have not exhausted their administrative remedies; (2) plaintiffs have not joined the International Association as a party defendant which defendant says is a fatal nonjoinder of an indispensable party; (3) plaintiffs have not qualified under the constitution of the International to transfer into the defendant local union, which ground in its brief the defendant considers to be its "basic meritorious defense."

### Findings of Fact

The testimony and exhibits established the following with respect to the several plaintiffs:

#### Harold E. Ferger

(1) He received membership in Local 60, Syracuse, N. Y., in 1941.

(2) He first secured work through Local 483 in 1942 or 1943.

(3) He established his residence within the jurisdiction of Local 483 after World War II and has continued to the present date to secure work through Local 483.

(4) He paid money to Local 483 during all the time he secured work through it, and continued to pay dues to Local 60 (50 cents a day to Local 483; $10.00 a month to Local 60).

(5) He requested of Local 483 a permit pending transfer in 1941 while living in New York, and in 1947 after moving to New Jersey.

(6) He and the other plaintiffs sent a letter and their membership books to William Chieco, Secretary of Local 483, on May 23, 1960; the letter was sent by registered mail to Chieco's home and was returned "Not accepted." The letter requested transfers and permits pending transfer.

(7) He and the other plaintiffs on May 26, 1960, sent a letter and their membership books to J. R. Downes, General Secretary of the International, stating that Chieco had refused to accept their books, and requesting that transfers be effectuated by the International.

(8) In 1962 he and Patrick F. Norton were excluded from a union meeting. He has never been permitted to vote at a meeting of Local 483 or to participate in a meeting for any other purpose.

(9) He wrote to J. H. Lyons, General President of the International on August 16, 1961, setting forth the steps taken by him to effect a transfer, and asking how much longer he would have to wait before the International would effect the transfer.

(10) He sent another letter to Lyons on September 19, 1961, finding fault with Lyons and setting forth his unsuccessful attempts even to get an appointment with Mr. Boyen, President of the District Council for Greater New York and vicinity, with whom he wanted to discuss his transfer request.

*Patrick F. Norton*

(1) He joined Local 170 in New York in 1951.

(2) He moved to New Jersey in 1951 and subsequently has secured work through Local 483.

(3) He has paid dues to Local 170 and assessments to Local 483.

(4) He and plaintiff Ferger requested transfers from Mr. Templeton and Mr. Chieco of Local 483 in 1959 or 1960.

(5) He offered his membership book to Chieco forty or fifty times as part of his attempt to obtain a transfer.

(6) He authorized plaintiff Ferger to send his book to Chieco and subsequently to the International.

(7) He was excluded from a union meeting in 1962.

(8) He wrote letters to Downes November 28, 1960 and March 10, 1961, complaining of the delay in his transfer and asking for his aid in obtaining a transfer.

*William J. Norton*

(1) He joined Local 170 in New York on April 18, 1951.

(2) He moved to New Jersey in May 1951 and subsequently has secured work through Local 483.

(3) He is paid up to date with respect to dues and assessments.

(4) He requested a transfer from Chieco, Templeton and Cuisick of Local 483 many times and was refused each time. His first request was to Chieco in March of 1959 or 1960 and plaintiff Brittain accompanied him at that time.

(5) He gave his book to Ferger at two different times—once to be mailed to Chieco and once to be mailed to the International.

(6) He wrote letters to Lyons.

(7) He did not try to attend meetings because he knew it would be useless.

*Columbus P. Brittain*

(1) He joined Local 636 in Durham, North Carolina, in 1952.

(2) He moved to Newark, N. J. in 1955, and after a few weeks in Newark moved to Lyndhurst.

(3) He is paid up to date with respect to dues and assessments.

(4) He first secured work from Local 483 in 1955 or 1956.

(5) He first applied for transfer to Local 483 in early 1960; he applied to Chieco in the presence of plaintiff William J. Norton, and was refused.

(6) He asked Chieco many times for a transfer.

(7) He wrote a letter to Lyons on March 12, 1962 in which he referred to a letter received from Downes twenty-three months previous, advising him to see Chieco, and asked if charges against Chieco would hasten the transfer.

(8) He gave his membership book to Ferger twice, to be sent to Chieco and to the International.

(9) He has not tried to attend union meetings since outsiders are not allowed in.

The following facts were also established:

(1) Chieco has honored no transfer requests since he has been financial secretary of Local 483.

(2) Templeton met with plaintiffs at the Paterson Elks Club in 1963 and informed them that Local 483 would not honor their transfer requests at that time but that they might be given consideration at a later time.

(3) Lyons, President of the International, was aware of the letters sent by plaintiffs to the International

### Discussion

The case of Hughes v. Local No. 11 of International Association of Bridge, etc., 3 Cir., 287 F.2d 810 (1961), appears to be controlling as to jurisdiction in the situation presented by the present action. As restated by the 3rd Circuit Court of Appeals in Tomko v. Hilbert, 3 Cir., 288 F.2d 625, the Hughes case "held that an action did lie under the LMRDA against a *union* for its refusal to accept a transfer of membership from another local of the same international."

The District Court in the Hughes case 183 F.Supp. 552) had dismissed the complaint, holding that plaintiff was not entitled to the equal rights of members guaranteed by Section 101(a) (1) of the LMRDA (29 U.S.C.A. § 411(a) (1)) since he was not a "member" of Local 11. The 3rd Circuit, in reversing on appeal, held that "member" as defined in Section 3(o) of the LMRDA (29 U.S.C.A. § 402(o)) includes any one who meets all of the requirements for membership. In that case these requirements were sufficiently met for the purpose of the appeal by plaintiff's allegations that all of the requirements for membership in Local 11 were contained in the constitution of the International, that he complied with all these requirements, and, moreover, that Local 11 was required by the International's constitution to admit him into membership.

Although the Hughes case was decided on the basis of the pleadings and from affidavits filed in the court below, and the court did not determine what the requirements for membership in Local 11 were, nor whether the four-month exhaustion requirement had been satisfied, *nevertheless* the following facts were before the court: (the significance of these facts to the present action will become apparent hereinafter).

(1) Plaintiff was a member of Local 489 in Scranton.

(2) He moved from Scranton to New Jersey in *1951* and since that date performed work within the jurisdiction of Local 11 with that Local's knowledge and consent.

(3) About October *1957* he requested a transfer from Local 489 to Local 11.

(4) He attempted to surrender his membership book to Local 11 and attempted to effect his transfer by appeals both to it and to the International.

The contentions of the defendant represent an attempt to avoid, in the present action, the rules of law set forth in the Hughes case and others to be cited. Each defense will now be separately considered, in turn.

### A. *Exhaustion of Intra-Union Hearing Procedures*

Section 101(a) (4) of the LMRDA (29 U.S.C.A. § 411(a) (4)) provides that:

"No labor organization shall limit the right of any member thereof to institute an action in any court * * Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof * * * "

This section was considered by the 3rd Circuit Court of Appeals in Sheridan v. United Brotherhood of Carpenters, etc., 306 F.2d 152 (1962), with differing conclusions being reached in concurring and dissenting opinions. It was again considered by this court in Harris v. International Longshoremen's Asso., Local 1291, 3 Cir., 321 F.2d 801. These cases indicate that the plaintiffs herein have sufficiently exhausted their intra-union remedies.

After previous requests for transfers had been denied, all of the plaintiffs, on May 23, 1960, tendered remittances and their paid-up membership books to William Chieco, Financial Secretary of Local 483, by registered mail, again requesting transfers. Their letter was returned unopened, having been refused by the addressee. Subsequently they tendered their books and remittances to James R. Downes, General Secretary of the International, along with documentary proof of their attempt to secure transfers from Chieco. This was done by registered mail on May 26, 1960 and transfers procured through International headquarters, as provided for in the International constitution, were requested. Subsequently each of the plaintiffs wrote to J. H. Lyons, General President of the International, or to Downes, asking that the International effect their transfers.

Chieco admitted that he refused to accept the plaintiffs' books and that there had been no transfers honored by defendant Local since he had been financial secretary.

John D. Templeton, Jr., Business Agent of defendant Local, testified that he told the plaintiffs, at a meeting in 1963 at the Paterson Elks Club, that the Local "is not in a frame of mind to do anything for anybody" but that if there were a relaxation he would try to see that they were given consideration. He also testified that in October 1960 International President Lyons stated that he considered the letters from plaintiffs "nothing but a nuisance."

If plaintiffs met the prerequisites for their requested transfers, then Article XX, Sections 30 through 35, of the International constitution made the issuance of such transfers mandatory. Article XIX, Section 10, permits charges to be brought against any local, officer or member for violation of any provision of the constitution. Such charges are to be "in writing and filed in duplicate with the General President."

██ The letter to Downes of May 26, 1960, and subsequent letters to Lyons, constitute charges sufficient to meet adequately the exhaustion requirements of the LMRDA as set forth in the Sheridan and Harris cases. In Sheridan an informal letter which was "substantially an appeal" was considered an appeal to the General President. A requirement in the constitution that an appeal be notarized was considered "minor" and "waived" since "There is no evidence of attempt to evade or avoid the required notarization; no evidence that it was not overlooked; no evidence that it would not have been readily attended to on notice of the omission." Similarly in the present action the requirement of two copies is minor and was waived.

█ Charges filed with the General President would be heard by the General Executive Board (of which he is a member) if in his opinion they justify a trial. (Art. XIX, Section 10). Since correspondence intended for this Board is to be addressed to the General Secretary, charges filed with the General Secretary constitute substantial compliance with the requirement of filing with the General President. Moreover, Templeton testified that President Lyons, in 1960, was cognizant of the letters from plaintiffs.

█ The Harris case states that "it is not necessary for a member who intends to institute legal proceedings against the union or one of its officers to proceed through any intermediate appellate agency." Thus, the plaintiffs were not required to pursue whatever intra-union appellate procedures there may be beyond the filing of charges with the General President.

The Harris case also holds that intra-union remedies must be pursued for four

months only if "there is likelihood that some decision will be forthcoming within the four-month period, and the aggrieved member has not shown that he will be harmed by being required to seek such a decision." It further indicates that intra-union remedies need not be pursued if to do so would have been futile.

While this court finds that the plaintiffs in the present action have pursued their remedies within the union for the requisite period, it is also convinced from the evidence adduced at trial that any further such efforts on the part of the plaintiffs would have been futile.

In view of the previous finding, it is not necessary for this court to determine whether the intra-union hearing procedures set forth in the International constitution are "reasonable" as required by the LMRDA.

### B. *Failure to join the International in the present action*

■ Defendant Local 483 asserts, on the basis of Nix v. Spector Freight System, D.C., 157 F.Supp. 10, that the International is an indispensable party to the present action and that its nonjoinder is fatal to the prosecution of the present action.

In the Nix case Judge Wortendyke held that a suit by employees against their employer to enforce seniority rights claimed under contracts negotiated by a union, which was accused of conspiring with the employer to give seniority preference to other employees, made the union an indispensable party. The court found that any decree it might render as between the parties before it "would necessarily have an injurious effect upon the Union's interest."

The Nix case is inapposite to the present action. Here the relief sought can be provided by the local alone without involving the International at all. The International has no connection with the present action other than with respect to plaintiffs' showing that they had sufficiently exhausted available intra-union remedies.

In the Hughes case, supra, the Court of Appeals held the complaint therein to be sufficient despite the fact that the International was not joined as a party. Although the "indispensable party" argument was not discussed, provisions of the International constitution permitting applications to the International for transfer and allegations by plaintiff of appeals to the International were considered.

### C. *Plaintiffs' qualifications to seek transfers*

■ Defendant Local 483 considers as its "basic meritorious defense" the contention that plaintiffs are not qualified to seek transfers into the defendant Local. Sections 30, 32, 33 and 35 of Article XX of the International constitution provide for transfer of members who have fulfilled the "requirements" for such transfer. The only "requirement" which defendant can find is a provision in Section 31, Article XX, which allegedly requires that a member tender his book "when coming into the jurisdiction." Defendant asserts that this requirement has not been met by any of the plaintiffs since at least five years passed between the time they came into the jurisdiction and the time they formally mailed their books to Chieco requesting transfers.

Plaintiffs, however, testified to numerous requests for transfer prior to 1960. Any requirement of immediate tender was never pointed out to the plaintiffs. Moreover, at the Elks Club meeting Templeton told the plaintiffs that if a "relaxation" developed in the Local's "frame of mind" the plaintiffs' transfer requests would be given consideration. Templeton therefore believed any such requirement to be waivable and if such requirement did exist, this court would find that it was waived.

However, it is the view of this court that defendant Local 483 is misconstruing the International constitution. Section 31, Article XX, states that "a member in good standing when coming into the jurisdiction of any local union, shall tender to the Secretary, Business Agent

or proper officer of such local union, his membership book \* \* \*." This simply requires that the member be in good standing when coming into the jurisdiction. The "when coming" phrase is separated by a comma from the "shall tender" phrase while it is immediately adjacent the "good standing" phrase and seems logically to belong with the "good standing" phrase.

This interpretation is strengthened by Section 32, Article XX, which requires that "Any member who goes into the jurisdiction of any local union to work and fails to immediately notify in person or by mail the financial secretary of such local union that he is in their jurisdiction, shall be fined the sum of $50.00 plus $2.00, for each 15-day period said member has worked in such jurisdiction \* \* \*." Thus when a member is here required to take certain steps upon going into the jurisdiction, they are required to be taken "immediately" and a specific fine is imposed for not doing so.

Furthermore, to interpret Section 31 as defendant requests would impose an undue hardship upon members in good standing who do not tender their books immediately upon coming into the jurisdiction. As pointed out by the defendant, they often travel from location to location without intending to transfer their memberships whenever they move and consequently may decide to take up permanent residence in an area only after working there for a considerable period of time.

In the Hughes case cited above, the court had before it sections of the International constitution relevant to the present situation (the present action involves another local of the same International). These sections included the requirement that a member tender his book "when coming into the jurisdiction of any local union." (Art. XX, Sec. 31).

It is now asserted by the defendant Local in the present action that the above-quoted phrase is the only prerequisite to the transfer from one local to another (defendant's post hearing memorandum p. 6). Thus, although the Court of Appeals did not determine the requirements of membership in Local 11 (in part because it feared it might not have before it *all* the relevant evidence, footnote p. 819 of 287 F.2d), it did not find that the "when coming" clause precluded the requirements from being met because of a six-year delay in that case between plaintiff's moving into the jurisdiction of the local and his request for a transfer.

### Relief

The plaintiffs request that the court enter judgment obligating the defendant Local 483 to grant them membership in defendant Local. The Hughes case, however, indicates that an order so framed may be improper. The court there points out that the right to transfer is not specifically enumerated in Section 101(a) (1) of the LMRDA. (29 U.S.C.A. § 411(a) (1)). This section does guarantee to them the right "to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings \* \* \*." They are entitled to all rights guaranteed to members by the LMRDA but are not entitled, under this statute, to any additional rights of members not guaranteed by this statute.

The Third Circuit therefore indicates that any order be framed in terms of the statutory language. Since plaintiffs allege a denial of their rights as guaranteed by Section 101(a) (1), the order should be in terms of that section's language as quoted above.

Let an order be submitted.