94 N.J. Super. 554 (1967)
229 A.2d 532
HAROLD E. FERGER, WILLIAM J. NORTON, PATRICK F. NORTON AND COLUMBUS P. BRITTAIN, PLAINTIFFS,
v.
LOCAL 483 OF THE INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS, AFL-CIO, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided April 4, 1967.
*556 Mr. John J. Bracken for plaintiffs (Messrs. Bracken & Walsh, attorneys.)
Mr. Thomas L. Parsonnet for defendant (Messrs. Parsonnet & Parsonnet, attorneys.)
MATTHEWS, J.S.C.
Plaintiffs are members of the International Union of which defendant is a local. Harold E. Ferger is a member of Local 60, located in Syracuse, New York, having been admitted to membership therein during 1941. Patrick F. Norton and William J. Norton are members of Local 170, located in Long Island City, New York, having been admitted to membership therein during 1951. Columbus P. Brittain is a member of Local 636, located in Durham, North Carolina, having been admitted to membership therein during 1952. Plaintiffs presently reside *557 within the jurisdiction of defendant local, and have continued at all times mentioned herein and to the present date to secure work through defendant. Sometime during the year 1960 each of the plaintiffs sought to transfer his membership from his Local to defendant local. Defendant refused to accept each request. Resort to administrative procedures under the International constitution proved fruitless.
Plaintiffs then instituted an action in the United States District Court for the District of New Jersey under section 102 of the Labor-Management Reporting and Disclosure Act (also known as the Landrum-Griffin Act), 73 Stat. 519 et seq. (1959), 29 U.S.C.A., secs. 401 et seq.[1] A copy of the pleadings in that action has been filed in this cause. The matter was tried by Judge Meaney, whose opinion is reported in Ferger v. Local 483, etc., 238 F. Supp. 1016 (D.C.N.J. 1964).
After a plenary trial the District Court found that the plaintiffs were members of defendant local within the meaning of section 3 (o) of the Labor-Management Reporting and Disclosure Act. See Hughes v. Local No. 11, International Ass'n of Bridge, etc., 287 F.2d 810 (3 Cir. 1961), certiorari denied 368 U.S. 829 (1961). The court rejected the several *558 defenses raised by defendant local and determined that plaintiffs had pursued their remedies within the union for the requisite period and that any further efforts on their part would have been futile; that the International Union was not an indispensable party to the proceedings, and that each of the plaintiffs qualified under the International constitution to seek the transfers requested.[2]
The concluding portion of the opinion of the District Court, which is captioned "Relief," reads as follows:
"The plaintiffs request that the court enter judgment obligating the defendant Local 483 to grant them membership in defendant Local. The Hughes case, however, indicates that an order so framed may be improper. The court there points out that the right to transfer is not specifically enumerated in Section 101 (a) (1) of the LMRDA. (29 U.S.C.A. § 411 (a) (1)). This section does guarantee to them the right `to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings * * *.' They are entitled to all rights guaranteed to members by the LMRDA but are not entitled, under this statute, to any additional rights of members not guaranteed by this statute.
The Third Circuit therefore indicates that any order be framed in terms of the statutory language. Since plaintiffs allege a denial of their rights as guaranteed by Section 101 (a) (1), the order should be in terms of that section's language as quoted above."
Judgment on the opinion was subsequently entered,[3] and on appeal the Third Circuit affirmed. 342 F.2d 430 (3 Cir. 1965).
*559 Following the entry of judgment of affirmance in the Third Circuit, plaintiffs tendered their dues books to defendant local, requesting that the desired transfers of memberships be made. Such a tender is a requirement for transfer under the provisions of the International constitution. Defendant refused to accept the books tendered, and refused to transfer the memberships as requested. Plaintiffs then moved before Judge Meaney for an order holding defendant local in contempt. He denied the application, citing Hughes v. Local 11, etc., supra.[4] The denial of the motion was appealed to the Third Circuit. The Circuit Court of Appeals affirmed per curiam, 356 F.2d 854 (1966). In its opinion, the Circuit reviewed the litigation and expressed not inconsiderable sympathy with the plight in which plaintiffs found themselves, but concluded that it would not grant the relief sought, stating:
"The appellee indicated at oral argument of this appeal that it would not voluntarily budge from its position despite the admittedly remedial purpose of the Landrum-Griffin Act. Though the sought for union membership is effectively spelled out in Section 101, because formal membership in the desired local is not specifically there stated, these appellants are condemned to the unbearable status of being legally deprived of their named International constitutional right to be accepted as members by appellee. Because of the present status of the key problem involved, it is impossible to consider it on its merits in this action."[5]
*560 It should also be noted that, pending the original appeal, the International Union had amended its constitution to permit the transfer of members between locals only if the local to which transfer was sought approved the transfer. After the adoption of the amendment, the local union moved before the Third Circuit Court of Appeals asking leave to amend its pleadings to include the constitutional amendment and to argue its appeal as if the amendment were applicable to the case then pending. The motion was denied.
After the entry of judgment in the Circuit, plaintiffs petitioned the United States Supreme Court for certiorari. The petition was denied. 384 U.S. 908, 86 S.Ct. 1346, 16 L.Ed.2d 361 (1966)
In their present status, as separate but equal members of defendant local, plaintiffs are permitted to enjoy all the rights specifically set forth in section 101(a) (i) of the Landrum-Griffin Act, including the right to "nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings * * *." Plaintiffs have not been permitted *561 to transfer their memberships on the rolls of defendant. They continue to pay their dues to their old locals, and pay work fees to defendant. They cannot run for office. Concededly, they suffer no economic loss by virtue of their hybrid status.
Six days after the denial of the petition for certiorari by the Supreme Court of the United States, plaintiffs instituted this action in the Chancery Division, seeking specific performance of the transfer provisions of the International constitution, and asking this court to order defendant local to effect transfer of their memberships on its membership list.
Plaintiffs move for summary judgment, relying on their complaint which incorporates by reference all of the proceedings taken in the federal courts. At argument, counsel for both sides handed up copies of the appendices and briefs submitted in the federal courts. These latter documents were relied on for the statement of facts which has been set forth above.
Defendant local, opposing the motion, seeks to establish the existence of factual disputes, claiming fraudulent procurement of membership by each plaintiff in his respective local. Concededly, this defense, or issue, was not raised or tried in the federal court action. In addition to the claim of fraud, defendant also alleges three bars to the relief sought by plaintiffs: First, that plaintiffs are barred by the judgment in the federal case, invoking the principle of res judicata. Second, that plaintiffs are barred by their election to sue in the federal courts and their insistence upon continuing that case to judgment, notwithstanding what is claimed to have been defendant's constant assertion that the proper proceeding was in the state courts to enforce the constitution of the International. Third, that plaintiffs are barred by the amendment to the International constitution adopted during the month of October 1964, under which a transfer can be accomplished only with the consent of the local to which the transfer is to be made.
*562 In the federal litigation plaintiffs alleged violation of the International constitution and the bill of rights provisions of the Labor-Management Reporting and Disclosure Act of 1959. The District Court found violation of both the International constitution and the act. However, it held that its jurisdiction under the act permitted it to give plaintiffs only the partial relief set forth above. Defendant local claims that a clear understanding of the District Court's judgment cannot be gained without a full reading of the opinion of the Circuit Court of Appeals in Hughes v. Local 11, etc., supra. It points out that under the holding of the court in that case, the District Court had to conclude that the word "member", as defined by the Landrum-Griffin Act[6] meant merely that the plaintiffs had performed what was required of them to become members; on that basis, it contends, the court further concluded that under the act, and only under the act, the plaintiffs were guaranteed the rights by section 101(a)(1). Judgment to that effect was therefore entered.
Judge Meaney's opinion in Ferger v. Local 483, cited above, affirmed per curiam by the Circuit, determined that each of the plaintiffs was a member of his particular local union as alleged in the complaint; that each had moved into the jurisdiction of defendant local and had, for some period of time, worked within the jurisdiction of defendant; that each had sought on many occasions to transfer his membership to defendant local, unsuccessfully; that, under the facts, each had exhausted intra-union procedures and remedies; and, finally, that each had met all of the qualifications under the International constitution to seek the desired transfers.
*563 Without question, the judgment of the United States District Court, affirmed by the Circuit Court of Appeals, must be regarded in this action as dispositive of the issues there tried between these parties. Thus, the doctrine of collateral estoppel bars either party from relitigating here the issues decided by the federal court. In Robinson-Shore Development Co. v. Gallagher, 26 N.J. 59 (1958), our Supreme Court stated:
"The rule in respect to collateral estoppel was succinctly stated by the United States Supreme Court in Southern Pacific R.R. Co. v. United States, 168 U.S. 1, 48, 18 S.Ct. 18, 42 L.Ed. 355 (1897), quoted from by Justice Jacobs in N.J. Highway Authority v. Renner, 18 N.J. 485, 494 (1955). It is
`The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.'
See also Restatement, Judgments, § 68 (1942), Scott, `Collateral Estoppel by Judgment,' 50 Harv. L. Rev. 1 (1942)." (at p. 67)
In Bango v. Ward, 12 N.J. 415, 420 (1953), Justice Brennan, writing the opinion for our Supreme Court said:
"When a party who is afforded a fair opportunity to litigate a claim or cause of action before a court which has jurisdiction over the parties and the subject matter suffers a final judgment adverse to him on the merits, parties in whose favor the judgment is entered, and their privies, may assert the judgment as a bar in a subsequent action on the same claim or cause of action. * * * The public interest in putting an end to litigation, which underlies the principle of res judicata, as well as the interest of parties requires that the loser in such case shall be denied a second chance to litigate the matters determined by the final judgment."
It is noted that in Bango the defense of res judicata was determined by the court to be a bar to the proceedings there taken on a motion for summary judgment.
*564 These principles of law not only bar both defendant and plaintiffs from relitigating the matters tried before the United States District Court and determined by its judgment; they also, I conclude, bar defendant from asserting in this action the defense of fraud by each of the plaintiffs in procuring his original membership in the local union from which he now seeks transfer. Cf. Falcone v. Middlesex County Med. Soc., 47 N.J. 92 (1966). While it is true that this defense was not raised in the District Court, it should have been raised there, if not initially, at least by amendment. It is not difficult, after a reading of the record in the District Court, to conclude that the defense has been raised here as the result of certain answers given by each of the plaintiffs during cross-examination at trial. Defendant has not been given the opportunity to raise the defense here by formal answer. Nevertheless, it strikes me, on the merits, as being of extremely flimsy nature and, perhaps, a delay-seeking afterthought. In any event, I find that the judgment of the District Court, finding that each of the plaintiffs met the qualifications for transfer, effectively bars defendant from raising that issue here.
The troublesome question raised by defendant's arguments, mentioned above, arises out of the scope of the relief granted to the plaintiffs by the federal court under its judgment, as contrasted with the relief of specific performance or equitable mandamus sought here. Defendant, conceding that it as well as plaintiffs is bound by the judgment of the federal court, contends that neither can now change, add to, or subtract therefrom. It contends that the single controversy doctrine, as stated in the Falcone case, should be applicable here. Linked to that argument is the claim that plaintiffs are barred by electing to sue, in the first instance, in the federal courts.
Plaintiffs, answering these arguments, claim that the single controversy rule is inapplicable to them here, even under the principles of Falcone. They point out that *565 plaintiff in Falcone at no point during the course of the litigation asserted a claim for money damages against the medical society. It was that failure which the Supreme Court found to be a bar to the damages relief sought in a subsequent action under the single controversy rule. Plaintiffs state that they did raise the proper factual allegations in their complaint in the District Court, and also demanded that judgment be granted obligating defendant to grant each of them membership in the local, in accordance with the International constitution and the cited statute. As to the defense of election of remedies, plaintiffs contend that they actually sought two remedies in the District Court: a determination of deprivation of rights under the federal statute, and an order directing defendant to transfer each of them to its membership rolls. They point out that they only received one remedy and are seeking the other in this court because of lack of jurisdiction in the federal court.
The issue raised by these arguments may be simply stated: Did the failure of the federal court to exercise pendent jurisdiction in the controversy then before the court effectively bar plaintiffs from obtaining the complete relief sought here, under the principle of res judicata?
The concept of pendent jurisdiction is essentially the by-product of judicial efforts to cope with the problems occasioned by the existence of parallel state and federal remedies for the invasion of the same or similar legal rights. Considerations of judicial economy and litigant convenience, as well as potential res judicata problems, indicate the desirability of unitary litigation of such related claims. Ordinarily, no problem arises with the joinder of federal and non-federal claims when federal jurisdiction in a case is determined by the existence of diversity of citizenship. However, when the plaintiff comes into federal court solely on the basis of a claim arising under federal law, it becomes necessary to determine whether the jurisdiction of the federal court over the federal claim *566 permits a sufficient basis to determine an accompanying nonfederal claim against the same defendant. Pendent or parallel jurisdiction, as it is sometimes referred to, has its roots in Article III, Sec. 2, of the United States Constitution. The judicial power of the United States extends to "all Cases * * * arising under * * * the Laws of the United States * * *." The import of this section of the Constitution was brought to the fore in the opinion of Chief Justice Marshall in Osborn v. President, etc., Bank of the United States, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824). In Osborn the court held that the grant of federal jurisdiction over cases arising under the Constitution, treaties, and laws of the United States contemplates and authorizes the adjudication of any nonfederal issues necessary to the resolution of a federal claim.
The problems inherent in this concept of judicial power were emphasized by the decision of the Supreme Court in Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1178 (1936). That case involved a federal statutory claim for infringement of a copyright, accompanied by a non-federal claim of unfair competition by reason of plagiarization of the copyrighted play. The court below had dismissed the action, so far as relief under the copyright clause was concerned, thus disposing of that cause on the merits. Then, finding no diversity of citizenship, it proceeded to dismiss the unfair competition allegation for want of jurisdiction. The Supreme Court reversed, holding that since the lower court had acquired jurisdiction under the federal statute, it also had jurisdiction to decide the purely local action based on unfair competition. After the decision in Hurn, a great deal of controversy existed both in the courts and among the legal writers as to the extent and true meaning of the doctrine. See, e.g., Strachman v. Palmer, 177 F.2d 427, 432 (1 Cir. 1949), and Dann v. Studebaker-Packard Corp., 288 F.2d 201 (6 Cir. 1961); "The Evolution and Scope of the Doctrine of Pendent Jurisdiction in the Federal Courts," 62 *567 Colum. L. Rev. 1018 (1962); "Problems of Parallel State and Federal Remedies," 71 Harv. L. Rev. 513 (1958).
In Dann the Sixth Circuit Court of Appeals refused to take pendent jurisdiction of plaintiff's demand that a corporate election be rescinded under state law, after the court had determined that the proxies solicited in the same election were invalid under the Securities Act of 1934. In refusing to act the court pointed out that the federal question there involved was "negligible" as compared with the "immense preponderance" of questions of state law raised by the rescission claim, and noted that more facts would have to be established in order to support a rescission under the state law.
The most recent pronouncement in this area is found in United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Gibbs had been awarded compensatory and punitive damages against the Mine Workers Union for alleged violation of section 383 of the Labor-Management Relations Act of 1947, and the common law of Tennessee. The case grew out of the rivalry between the United Mine Workers and the Southern Labor Union over the representation of workers in the Southern Appalachian coal fields. The District Court had granted judgment to Gibbs on the state common law claim (an award for interference with plaintiff's employment), despite the jurisdictional basis for the action in the federal court being an alleged violation of the federal act, and the dismissal of that claim before judgment. Thus, the only recovery granted to plaintiff was on the state claim. In reversing, the Supreme Court, through Mr. Justice Brennan, made the following observations with respect to pendent jurisdiction:
"* * * Pendent jurisdiction, in the sense of judicial power, exists whenever there is a claim `arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority * * *.' U.S. Const., Art. III, § 2, and the relationship between that claim and the state claim [made in the *568 complaint] permits the conclusion that the entire action before the court comprises but one constitutional `case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. Lavering & Garrigues Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.
That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. There may, on the other hand, be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong. * * *"
It should be noted that the decision in Gibbs, was handed down after the decisions in Ferger v. Local 483 in the federal courts.
It is apparent, from the viewpoint of convenience and judicial economy, that there is much to favor the doctrine of pendent or parallel jurisdiction. It is also apparent that the doctrine and the propriety of invoking it in a particular case, do not lend themselves to synthesization in a rule of absolute dimensions. The United States Supreme Court has made it clear in both Hurn and Gibbs that federal courts cannot indulge in generous enlargement of jurisdiction where the federal question involved leaves no room. The Supreme Court has defined jurisdiction in *569 narrow terms which permit expansion on the theory of pendent jurisdiction only where it is merited under the facts of a particular case. In Gibbs Justice Brennan clearly stated that the application of the doctrine within the guide lines established both in that decision and Hurn must ultimately resolve itself into a question of judicial discretion, to be weighed de novo in each case. Considering these principles, then, the refusal by the federal court to entertain the claim for state law relief by invoking pendent or parallel jurisdiction cannot be regarded as an adjudication of that claim for relief on the merits so as to raise the principle of res judicata in subsequent state court proceedings; nor can such refusal be the basis for raising the claim of collateral estoppel in subsequent state court proceedings.
Turning to the controversy here, it is apparent that the federal courts declined to exercise pendent jurisdiction when the matter was before those courts. Under the construction given the Labor-Management Reporting and Disclosure Act of 1959, the trial court determined that it could not go beyond the jurisdiction conferred on it by the terms of the act. Under this construction, a literal enforcement of the bill of rights provisions of the act was granted to plaintiffs, but not the ultimate relief which is sought here.[7] While it is true that plaintiffs, in bringing the federal action, sought complete relief, including that of transfer of membership on the books of defendant local, it is apparent that they believed that the expected relief under the federal judgment would be complete. It is also apparent that they did not anticipate that the federal court would construe the provisions of the federal act as strictly and narrowly as it did. To say, as defendant local *570 does, that plaintiffs should have instituted their action in the state courts in the first instance, is, I submit, an oversimplification. Hindsight makes a great prophet. Without the federal decisions with which we are concerned here, I believe grave difficulties may well have arisen for plaintiffs had they instituted their claim for relief in this court in the first instance. It takes no great imagination to conceive of the probable defenses which would have been raised to such an action, including claims of federal pre-emption, or the right of plaintiffs to complete relief under the provisions of the Labor-Management Reporting and Disclosure Act of 1959.
Implicit in the law of this case, as established by the judgments of the federal court, is the conclusion that the remedies available to the plaintiffs under the federal law and the state law, respectively, are not cumulative. Compare McCann v. Whitney, 25 N.Y.S.2d 354 (Sup. Ct. 1941). Accordingly, speculation as to whether the federal courts should have granted complete relief, i.e., relief including that afforded under state law, becomes irrelevant. In any event, such speculation must be regarded as improper in light of the federal court determination of lack of jurisdiction.
Plaintiffs' situation here is more analogous to that of the plaintiff in Tremarco v. Tremarco, 117 N.J. Eq. 50 (E. & A. 1939). The court there held that the doctrine of election of remedies was not applicable where the remedy sought was not inconsistent with the earlier case, but was for further relief which only "our courts can give." Tremarco was a divorce case in which the plaintiff had earlier obtained a New York divorce decree a mansa et thoro on the grounds of desertion, the limited divorce being the only relief allowed under the circumstances by New York law at the time. The New Jersey court held that the wife could get a full divorce in New Jersey, this relief not being inconsistent with the New York relief obtained. In reaching its conclusion, the court stated:
*571 "When the New York action was begun the full two years had expired and the wife had a remedy in this state for an absolute divorce, but of this remedy she was ignorant because supposing her husband still resident in New York. Being ignorant of the residence of her husband in this state, she sought the only relief available under the law of New York in that state and obtained the decree of separation already set out. It is said in 20 Corp. Jur. 35, that `in order to constitute a binding election the party must at the time the election was alleged to have been made have had knowledge of the facts from which the co-existent, inconsistent, remedial rights arose; since any position taken by a party before knowing all the facts should be classed as a mistake and not as an election,' and the application of the rule of estoppel in the present case might well be denied on this ground. We prefer, however, to put it upon the fundamental ground that the action in New York, disregarding the knowledge or want of knowledge of the true facts on the part of the wife, did not constitute an election, inasmuch as the two actions are not inconsistent, one with the other, but that the action in this state is for the further relief based upon the same ground as that presented in the New York courts and which incidentally the courts of that state were unable to give." (at pp. 53-54; emphasis added.)
Defendant local contends, finally, that the amendment to the International constitution adopted in October 1964 during the pendency of the federal litigation prevents plaintiffs from obtaining the relief sought here. Under the International constitution, as amended, a transfer by a member of one local to another may be effected only with the consent of the local to which the member desires to transfer. Prior to the adoption of the amendment, no discretionary powers were granted to local unions under the International constitution with respect to the reception of transferees from another local. As noted heretofore, defendant local in the federal action sought to have the record on appeal to the Circuit Court of Appeals enlarged to include the adoption of this constitutional amendment. Such leave was denied by the appellate court. Defendant, accepting that ruling, concedes that for the purposes of the federal case the amendment was irrelevant, since the only issue involved in the federal case was one under the Landrum-Griffin Act. It points out that under the act, as interpreted by the federal courts, and for the limited purposes of the act, plaintiffs *572 were already members of the local in that they had "fulfilled the requirements of membership" as required by the act. However, that the same is not true here. This action, defendant contends, is under the International constitution. Plaintiffs have not transferred to defendant local, and their rights to transfer are established by the International constitution as it existed when this action was instituted.
Plaintiffs, answering this argument, state that they requested transfers from their respective locals to defendant local prior to 1964, when the International constitution required defendant to admit them. They argue that the amendment may not be raised here, first, because the ruling of the Circuit Court of Appeals is part of the law of the case under the estoppel rules discussed above. Having no such amendment in existence when they made application for transfers in 1960, defendant cannot contend that the 1964 amendment operates retroactively and believe this court will take it seriously. Second, the amendment is meaningless in this action. Plaintiffs contend they are suing on defendant's refusal to permit their transfers during or prior to 1960. In short, each of their efforts in attempting to effect transfer to defendant local must be regarded as one application of continuing nature.
The pertinent portions of the International constitution, as amended, are found in article XXI, sections 30 and 31. They read as follows:
"Sec. 30. Any member desiring a clearance card for the purpose of transferring his membership to another Local Union shall apply to the Financial Secretary of his Local Union, and if such member is in good standing in his Local union, and no charges are pending against him, the Financial Secretary shall grant a clearance card upon the payment by the member of any unpaid dues or other obligations, plus One Dollar ($1.00) for the clearance card. The Financial Secretary of said Local Union, upon issuing said clearance card, shall report the same at the next meeting of the Local Union, and report same on regular monthly report submitted to International Headquarters.
Sec. 31. Thereafter a member obtaining a clearance card must present the same to the Local Union into which he desires to transfer, for acceptance by it, and the matter shall be referred to a joint committee *573 of such Local Union, which shall be comprised of the Examining and Executive Committees which shall report to the Local Union on the character and qualifications of the member making application for transfer, and said Local Union may, by a majority vote, accept or reject said clearance card, such acceptance or rejection to be entirely within the discretion of the Local Union."
Under my view of the controversy here, I find it unnecessary to determine the several questions raised by the parties as to the purport or effect of the amendment to the International constitution. The holding of the federal courts is that under the Labor-Management Reporting and Disclosure Act plaintiffs are members of defendant local in that they have met the qualifications for membership as required by the act. As such members they are entitled, therefore, to the protection of the bill of rights provisions of the act. While the International constitution has been amended to grant the above-mentioned discretionary right to local unions in accepting transfers, nothing was done to the constitution by way of supplement or amendment so as to effect a change in the requirements or qualifications for membership in the International Union. Those requirements, as set forth in article II, sections 1 through 6, have remained unchanged. There is nothing in the record of the federal proceedings, or in the proceedings in this action, which even remotely indicates that there is some change in the status of any plaintiff with respect to his membership in the International Union. I cannot accept any suggestion that the discretion given to local unions under the constitutional provisions quoted above is one of unbridled nature. It is not difficult to conceive of situations in which the exercise of the "discretion" granted to local unions might become arbitrary or unreasonable. Obvious examples would be the refusal to accept a member by transfer solely because of race, creed or ethnic origin. Under the facts here, all of the plaintiffs have been found to be members of defendant local. The refusal to transfer them on the books at this juncture by reason of the 1964 amendment can only be based upon some *574 unreasonable exercise of the discretion allowed under the constitution.[8] I find the constitutional provision to be no bar, under this record, to the relief sought by plaintiffs.
In Harker v. McKissock, 7 N.J. 323 (1951), our Supreme Court described the relationship of members of a trade union in the following terms:
"Judicial intervention in the internal affairs of trade unions is generally exerted for the protection of a `property right' or for the enforcement of what is deemed a contract expressed in the union's constitution and laws. (Citations omitted) The property and contract theories have been criticized as pure legal fictions. One writer suggests as a rational alternative concept the recognition of the union member as `essentially a citizen within an industrial government,' and the function of the courts as the prescription of `the minimum standards for the protection of individuals within that government.' 64 Harvard Law Review 1048, 1100. See, also, 43 Harvard Law Review 993. 87 University of Pennsylvania Law Review 985. But even though the relationship be deemed sui generis, not altogether governed by the principles of the law of contracts, it is yet an association derived from and dependent upon the common consent of the parties, expressed in the constitution and laws of the association, and the legal consequences of the compact are measured accordingly. There is a consensual relation giving rise to interests of substance which the law will protect. And the contract rationalization is generally considered sound and adequate. A voluntary association of this class is in its very nature a creature of contract by its members, though it is not necessarily a legal entity for all purposes distinct from its component members.
The articles of agreement are embodied in the constitution and laws of the association; and it is fundamental in the law of contracts that the legal rights and duties thereby arising shall be enforced as written unless condemned by the law. The conventional combination derives its force from and subsists by the will of the parties, and its dissolution entails such consequences as the parties have stipulated, consistent with law and established public policy. The contract establishes the rights of the association and the component unions and the individual members, in relation to one another." (at p. 328)
*575 Plaintiffs seek here, now that their contract rights have been established, judgment against defendant to secure for them the rights to which they are entitled. They desire to have their names included on the roll of members of defendant local. Under the circumstances of this case I can find no reason why they should not be granted the relief they seek. Cf. Calabrese v. United Association, 211 F. Supp. 609 (D.N.J. 1962), affirmed per curiam 324 F.2d 955 (3 Cir. 1964). See also, O'Brien v. Musical Mut. P. & B. Union, 54 A. 150 (N.J. Ch. 1903); Zeliff v. Grand Lodge of N.Y., Knights of Pythias, 53 N.J.L. 536 (Sup. Ct. 1891); Harker v. McKissock, supra.
For the foregoing reasons, I direct that the officers and members of defendant local refrain from excluding each of the plaintiffs from membership in the local, and further, that they accept into enrolled membership of the local each of the plaintiffs so that each may be accorded and exercise all of the rights and benefits under the constitution of the International Union.
The form of judgment may be settled on notice or by consent of the parties. Costs to plaintiffs.
NOTES
[1] In their complaint, filed April 18, 1962, plaintiffs alleged that (1) they were members in good standing of the International Union as a result of membership in various locals of the International other than Local 483; (2) for many years they had secured and performed work within the jurisdiction of Local 483, with that local's knowledge and consent, and have paid to the local fees demanded by it; (3) that in March, April and May of 1960, or thereabouts, they had requested transfers from their original locals to Local 483; (4) that the requests were made in accordance with the International's constitution and that Local 483 was required thereby to permit the transfers; (5) that Local 483 has refused the transfers; (6) that the plaintiffs had appealed this action to the International in substantial accordance with the International constitution, but that the International has failed and refused to act and more than four months have expired since such failure and refusal; and (7) that, as a result plaintiffs have been denied rights guaranteed to them by the Labor-Management Reporting and Disclosure Act.
[2] In its answer filed in the District Court action, defendant local asserted six separate defenses: (1) lack of jurisdiction in the court to hear the action; (2) lack of provision for the remedy sought by plaintiffs under the Labor-Management Reporting and Disclosure Act of 1959; (3) failure to set forth a cause of action upon which relief could be granted. (4) failure to exhaust reasonable hearing procedures and remedies under the International constitution; (5) failure to exhaust administrative remedies provided under the International constitution; and (6) failure to join the International as an indispensable party defendant. The court rejected all six defenses.
[3] The adjudicatory portion of the judgment entered provides:

"It is on this 28th day of May, 1964, ORDERED AND ADJUDGED that the defendant herein grant to the plaintiffs herein the rights guaranteed to them by Section 101 (a) (i) of the Labor Management Reporting and Disclosure Act of 1959 (29 U.S.C.A. § 411 (a) (i)), namely, the right to nominate candidates, to vote in elections or referendums of defendant, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations as prescribed in the constitution and by-laws applicable to the defendant herein; and it is further
* * *"
[4] During the colloquy at the contempt argument, the court stated:

"Well, it seems to be that the Hughes case suggests that this court has no right to order membership. It may order them to be entitled to vote and to take certain action but not to be carried on their membership lists."
[5] After stating the above, the opinion writer for the court made the following suggestion:

"We therefore suggest if plaintiffs should see fit to do so that they file in the district court a petition for clarification of the construction of Section 101 (a) (1) of the Act in this circuit as it pertains to plaintiffs' predicament. Said petition inter alia to contain a full outline of what has happened to date in plaintiffs' efforts to obtain said transfers. The objective of course would be to eventually have this court directly pass upon the merits of the precise question and so resolve the present confused, uncertain situation regarding it. At this time we express no opinion whatsoever on the merits of the controversy."
The other two judges on the panel hearing the appeal disagreed with the suggestion, filing the following concurring statement to the per curiam opinion:
"HASTIE, Circuit Judge (concurring).
I agree that the district court's order be affirmed and also agree that the plight of the appellants is lamentable. However, to me the jurisdictional basis of such a new petition as the per curiam opinion of this court suggests seems so doubtful that I do not join in encouraging that procedure.
Judge Smith concurs in Judge Hastie's concurring opinion."
[6] "§ 3 (o) `Member' or `member in good standing', when used in reference to a labor organization, includes any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization."
[7] In this action, unlike Gibbs, supra, there is no problem of federal pre-emption. Under section 103 of the Labor-Management Reporting and Disclosure Act of 1959, remedies under state law are retained, and are not superseded by the terms of the federal act. See Grand Lodge, International Association of Machinists v. King, 335 F.2d 340 (9th Cir. 1964), certiorari denied 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334 (1964).
[8] Defendant suggests that the amendment was adopted to insure that local unions of the International could protect themselves from International members who have been admitted to membership under lax professional-skill standards existing in some areas, and who seek transfer to a local which has high standards of skill as a prerequisite to membership. No question has been raised during this lengthy litigation as to the competence or skill of any plaintiff.