MILES *v*. AMERICAN RAILWAY EXPRESS COMPANY.

Opinion delivered October 10, 1921.

1.  DAMAGES—BREACH OF CONTRACT.—Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach should be such as may fairly and reasonably be considered either as arising naturally from the breach of the contract or as having been in contemplation of both parties at the time they made the contract, as the probable result of a breach of it.

2.  DAMAGES—CONTEMPLATED DAMAGES.—In determining what damages were contemplated by the parties to a contract, it is proper to consider the nature and purpose of the contract and the attending circumstances known to the parties at the time the contract was executed, and those damages should be awarded which might reasonably have been expected to follow from a breach of the contract.

3.  CARRIERS—BREACH OF CONTRACT TO MAKE PROMPT DELIVERY—CONTEMPLATED DAMAGES.—Where the head of a dog supposed to be afflicted with rabies was delivered to an express company for shipment to a medical laboratory to determine whether the dog was rabid, and its delivery was delayed until the head was so decomposed that it was impossible to determine that fact, the express company was liable to the shipper, whose child had been bitten, for expenses incurred in giving the child the Pasteur treatment, as the express company, having notice of the purpose of the shipment, must be held to have anticipated that, if the package was not delivered promptly, the Pasteur treatment would be administered to the child.

4. PARENT AND CHILD—RECOVERY BY PARENT FOR CHILD'S SUFFERING.
A parent suing a carrier for negligent delay in delivering to a
laboratory the head of a dog by whom child had been bitten, there-
by rendering examination for rabies impossible, could not recover
for the child's physical suffering in taking the Pasteur treatment.

5. DAMAGES—MENTAL SUFFERING.—The parent of a child bitten by
a dog supposed to be mad, suing a carrier for failure to deliver
the head of the dog shipped for microscopical examination, could
not recover damages for mental suffering, since damages for men-
tal suffering cannot be recovered in absence of physical suffer-
ing; nor could such parent recover punitive damages, in the
absence of express malice.

Appeal from White Circuit Court; *J. M. Jackson,*
Judge; reversed.

*Culbert L. Pearce,* for appellant.

1. As to the disease of hydrophobia or rabies and
its effects on the human body, and for a proper under-
standing of the reasons why the local physician advised
the father to send the dog's head by express to Little
Rock for microscopical examination, see Ander's Prac-
tice of Medicine. 13 Ed., p. 292; DaCosta's Modern Sur-
gery, 8 Ed., 351; DaCosta's Handbook of Mod. Treat.
vol. 1, p. 144; Encyc. Britannica, 11 Ed. vol. 14, p. 167;
Roseneau on Preventive Med. & Hyg. (1918) pp. 45-53.

We find no parallel case to this in the reports, but, as
supporting the theory of the express company's liability
under the facts alleged in the complaint, see 138 Ky. 704;
8 Tex. Civ. App. 363; 9 Exch. 341; 4 R. C. L. 737; *Id.*
745; *Id.* 936, 938; Hutchinson on Carriers, §1367; 89
Tex. 428; 94 Wis. 44; 92 S. W. 40; 91 *Id.* 1121; 88 *Id.*
870. On the question of special damages: 74 Ark. 358;
90 *Id.* 452; 76 *Id.* 220; 82 *Pac.* 502; 115 Ark. 142; 40 Cal.
657; 90 S. C. 366, 73 S. E. 772; 1 Q. B. Div. 274.

The patron of an express company is warranted in
expecting quicker and safer service from such company
than he could expect from an ordinary carrier. 104 N.
C. 278; 6 L. R. A. 271.

2. The defendant having been informed in advance
of the special purposes of the shipment, and its atten-

tion daily called by the father to the unnecessary delay, its failure to deliver was gross and willful negligence for which he is entitled to recover punitive damages for his own distress of mind and for the pain and suffering of the child. 5 Am. & Eng. Enc. of L., 2nd. Ed., 392; 4 R. C. L. 934; Hale on Damages, 102.

*Mehaffy, Donham & Mehaffy,* for appellee.

1.    The facts stated in the complaint do not show that either of the plaintiffs suffered any damages or had to pay out any money because of negligence on the part of the express company. 1 Shearman & Redfield on Negligence, p. 11; *Id.* pp. 42, 48; 20 R. C. L., 9.

2.    The fathers in this case could not recover for the pain and suffering of the children, nor for their own mental distress and anxiety. 27 S. W. 830; 9 *Id.* 598; 64 N. E. 595.

HART, J.    This is an appeal from a judgment sustaining a demurrer to and dismissing the complaint for damages for an alleged breach of contract.

On January 31, 1921, E. W. Miles filed an amended complaint against the American Railway Express Company which is as follows: ''The plaintiff alleges:

''That defendant is and was at all times hereinafter mentioned a common carrier engaged in the carriage of express matter for hire, over the line of the Missouri Pacific Railroad Company, between the town of Bald Knob and the city of Little Rock, Arkansas.

''That on the 15th day of June, 1920, plaintiff, through his agent, the Huffaker Mercantile Company, delivered to defendant, and the defendant accepted at its office in the town of Bald Knob, one metal bucket properly packed, iced and labeled, containing the head of a dog to be transported to the city of Little Rock, a distance of fifty-seven miles, and there delivered to the hygienic laboratory, and that plaintiff, through his said agent, paid the sum required of him as charges for said services, and

at the time informed defendant's agent of the contents of said shipment and the specific purpose for which it was intended to be used.

"That, on the morning of said day, the dog from which the head was afterward severed, while showing symptoms of hydrophobia—which symptoms also show in other and less dangerous diseases of dogs—severely bit and lacerated Florence Miles, aged six, a daughter of the plaintiff.

"That plaintiff, for the purpose of protecting the said child from the probable danger of contracting hydrophobia from the bite of said dog, and acting upon the advice of a local physician, killed said dog, severed the head therefrom and caused the same to be shipped as aforesaid for microscopical examination to determine whether said dog was affected with hydrophobia or rabies, a dangerous and dreaded disease which may be communicated to human beings, and which in most instances causes great suffering and certain death.

"That defendant wilfully, negligently and wrongfully failed and refused to deliver said bucket to the consignee until the evening of the fourth day after the day of shipment, at which time said dog head was so decomposed that a microscopical examination to determine the presence or establish the absence of hydrophobia germs could not be successfully made, and plaintiff was thereby deprived of the only method known and recognized by medical science for determining whether the said dog was infected with germs of hydrophobia.

"That plaintiff repeatedly communicated with the said hygienic laboratory by telephone, seeking information concerning the results of the intended examination, but each time was informed that no such shipment had arrived; and each time thereafter plaintiff went to defendant's office at Bald Knob and urged its agent to investigate the delay, but was given no information or satisfaction by the defendant's said agent, he appearing very indifferent about the matter.

"That, on the account of the failure as aforesaid to determine the presence or to establish the absence of hydrophobia germs in said dog by means of a microscopical examination, which failure was caused by the negligence of the defendant, plaintiff was then advised by his physician that the only reasonable course left for the protection of the said child from the probable dangers of hydrophobia would be to cause it to undergo a preventive treatment, which treatment is commonly and generally known as the Pasteur treatment for prevention of hydrophobia or rabies.

"That plaintiff, acting upon said advice, took said child to the department of pathology of the University of Arkansas School of Medicine, located in the city of Little Rock, and caused it to undergo the said treatment, which treatment required a twenty-one days' course and caused the said child much pain and suffering.

"That plaintiff expended the sum of $127.50 for medical services and medicine, attendant for said child, hospital fees, board, railroad fare and other necessary items, including express charges on said shipment and telephone messages in trying to secure delivery thereof, all of which he was compelled to expend on account of defendant's wilful negligence and wrongful failure and refusal to deliver said package within a reasonable time, and plaintiff further suffered much annoyance and inconvenience by reason of said default and suffered great anxiety and distress of mind on account of the pain and suffering of his said child by reason of said anti-hydrophobia treatment.

"That plaintiff is entitled to the sum of $127.50 for money actually expended as aforesaid, and the sum of $500 for special and exemplary damages on account of defendant's negligence as aforesaid.

"Wherefore plaintiff prays judgment for the sum of $127.50 on his first count, and for the sum of $500 on his second count, and for costs and for all other and proper relief."

On the same day W. N. White filed an amended complaint against the American Railway Express Company which is the same as the above complaint, except as to the name of the plaintiff and the name and age of the plaintiff's child.

The defendant filed a demurrer to the complaint in each case. The cases were consolidated by order of the court, and a demurrer to each complaint was by the court sustained.

The plaintiffs elected to stand on their amended complaints and refused to plead further. Whereupon the court dismissed the plaintiffs' cause of action and gave judgment against them for costs.

Counsel have not cited us to a case similar to the one at bar, and, after a somewhat diligent search, we have not been able to find a case directly in point. Counsel in their respective briefs have ably discussed the general principles of law applicable to the case. It is not necessary to go beyond our own decisions to find a statement of the general principles governing suits for damages for breach of contract. This court has always intended to follow the old English case of *Hadley* v. *Baxendale*, 9 Exch. 354, on this subject.

In *Western Union Tel. Co.* v. *Short*, 53 Ark. 434, the court said that the rule is correctly laid down in *Hadley* v. *Baxendale*, as follows: "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i. e.*, according to the usual course of things, from such breach of contract itself; or such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract, as the probable result of a breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants and thus known to both parties, the damages resulting from the breach of such contract which they would reasonably contemplate would

be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he at the most could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract."

To the same effect see *Hooks Smelting Co.* v. *Planters' Compress Co.*, 72 Ark. 275. In determining the reasonable contemplation of the parties, it is proper to consider the nature and purpose of the contract and the attending circumstances known to the parties at the time the contract was executed, and those damages should be awarded which might reasonably have been expected to follow from a breach of the contract.

In the case at bar the express company might have reasonably anticipated that plaintiffs would be put to the expense of the Pasteur treatment, if the package containing the head of the dog, which bit the plaintiffs' children, should not be promptly carried and delivered at the point of destination, and this, too, regardless of the fact that the dog might not have been rabid. It is commonly known that the Pasteur treatment diminishes the dangers by hydrophobia from the bites of rabid dogs. Under the allegations of the complaint, the express company knew, when it received the dog's head for shipment, that the object of the analysis was to ascertain whether or not the dog that bit the children was suffering from rabies. The express company must have reasonably anticipated that the Pasteur treatment would not only be administered to the children if an analysis of the dog's head showed that the dog was rabid, but that it would also be given as a precautionary treatment if the package was not delivered promptly so that an analysis of the dog's head might be made. So it may be justly assumed that such damages were within the contemplation and purposes of the parties in entering into the contract, and that the breach of

contract on the part of the express company was the proximate cause of the damages suffered by the plaintiffs in giving the Pasteur treatment to their children.

Counsel for the defendant urged that, if the dog suffered with rabies, the Pasteur treatment would have been given in any event, and that the complaint is faulty because it does not allege that an analysis would have shown that the dog was not a rabid animal. The argument is faulty in this respect. Counsel do not take into consideration the fact that the plaintiffs made known to the defendant the object and purposes of the analysis, and the defendant might have anticipated that it would be necessary to give the Pasteur treatment, regardless of the fact of whether the dog was a rabid animal or not, if there was a violation of the contract by the defendant in respect to the prompt carriage and delivery of the package containing the dog's head. The parties knew the purpose for which the package containing the dog's head was sent, and might have reasonably anticipated that a breach of the contract would cause the plaintiffs of necessity to go to the expense of the Pasteur treatment, and that the breach of the contract was the direct cause of the damage suffered by the plaintiffs.

This is a suit by parents for damages, and they can not recover for the physical suffering endured by their children. Neither can they recover damages for mental suffering. The parents did not receive any physical injury, and it is well settled in this State that mental suffering alone, unaccompanied by physical injury, can not be made the subject of an action for damages against the carriers. *St. L., I. M. & S. Ry. Co.* v. *Taylor,* 84 Ark. 42; and *St. L., I. M. & S. Ry. Co.* v. *Buckner,* 89 Ark. 58.

There was no element of wilfulness or statement of facts from which malice might be inferred. Hence there is nothing to justify the infliction of punitive damages against the defendant. *St. L. S. W. Ry. Co.* v. *Evans,* 104 Ark. 89, and *St. L., I. M. & S. Ry. Co.* v. *Dysart,* 89 Ark. 261.

It follows that the court erred in sustaining the demurrer to the complaint, and for that error, the judgment will be reversed, and the cause remanded for a new trial.