AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, LOCAL 380; James B. Strother; Thomas B. Lisenbey; Paul Davis; Alton J. McKim; Cletis F. Reggar; James Cash; Larry Beason; John Clift; Herman R. Nutt; Brad C. Eudy; Eric C. Ivey; Neil Hiatt; Billy J. Glaze; Alan Cook; Hugh Cagle; Shane N. Yarbrough; James W. Avant; Tony Weatherford; Randy Parish; Eugene Yarborough; Melvin Bryant; Phil B. Hughes; and Kaylon Burrow Plaintiffs

v.

HOT SPRING COUNTY, Arkansas; Lloyd Bultena; James Cranford; Melvin E. Crumby, Jr.; Raymond Yerby; Valerie J. Wiley; Harold Dean Thornton; Gordon Powell; John Fowler; Members of the Quorum Court of Hot Spring County, Arkansas; and James A. Bailey Defendants

No. CIV.03–CV–6133.

United States District Court,
W.D. Arkansas,
Hot Springs Division.

Oct. 1, 2004.

Pamela D. Walker;   James E. Nickels, for Plaintiffs.

C. Burt Newell, Ralph C. Ohm, Angela R. Echols, for Defendants.

## MEMORANDUM OPINION

DAWSON, District Judge.

This case arises out of Defendants' termination of an agreement whereby Defendants agreed to pay insurance premiums for Plaintiffs' dependents. Plaintiffs assert claims for breach of contract, violation of the Contract Clause of the United States Constitution, violation of a similar provision in the Arkansas Constitution, as well as violation of the Arkansas County Government Code. Presently before the Court are both Defendants' and Plaintiffs' Motions for Summary Judgment. (Docs. 10 and 22.) For the reasons that follow, Plaintiffs' motion for summary judgment (Doc. 22) is GRANTED with regard to the breach of contract claim, and judgment will be entered for Plaintiffs on this claim. Defendants' motion is GRANTED with regard to the Contract Clause claims under Article I, section 10 of the United States Constitution and Article 2, section 17 of the Arkansas Constitution, and all claims under the Arkansas County Government Code, and these claims are DISMISSED with prejudice.

### A.  Background

On October 1, 2002, Hot Spring County Judge Robert D. Parker entered into a collective bargaining agreement with the American Federation of State, County and Municipal Employees, Local # 380 (hereinafter "AFSCME") on behalf of Hot Spring County (hereinafter "the County"). (Doc. 1 Ex. A.) Under the agreement, the County agreed it would "continue to pay health insurance premiums for employees and their dependents." (Doc. 1 Ex. A, Art. XIV § 5.) At that time, both sides agreed on the following termination provision for the collective bargaining agreement:

[The Agreement] shall be automatically renewed from year to year...unless either party shall notify the other in writing sixty (60) days prior to the anniversary date that it desires to modify this Agreement. In the event such notice is given, negotiations shall remain in full force and effect during the period of negotiations and until notice of termination of this Agreement is provided the other in the manner set forth in the following paragraph:

In the event that either party desires to terminate this Agreement, written notice must be given to the other party no less than ten (10) days prior to the desired termination date, which shall not be before the anniversary date set forth in the preceding paragraph. (*Id.* Art. XV.)

Both parties agreed the October 1, 2002 agreement would be in effect for one year.

On January 1, 2003, C.T. Jim Homan replaced Robert D. Parker as Hot Spring County Judge. In a letter to Hot Spring County employees dated December 27, 2002, Homan expressed his intent to terminate the October 1, 2002 agreement (Doc. 10 Def. Ex. A–3.) After County Judge Homan's death in April 2003, his successor, James A. Bailey, wrote a similar letter on May 29, 2003 addressed to the County AFSCME members, which expressed his intent to terminate the October 1, 2002 agreement. (*Id.* Def. Ex. A–5.)

The quorum court also took action on the agreement. On March 11, 2003, it passed Appropriation Ordinance, Number 03–08 appropriating funds for the payment of insurance premiums for the county road workers' dependents in accordance with the collective bargaining agreement. (*Id.* Def. Ex. A–4.) Later, on September 9, 2003, it voted to reimburse county road workers for out-of-pocket insurance expenses for dependents incurred from April 1, 2003 through September 2003 and to pay insurance premiums for their dependents for September 2003. (*Id.* Def. Ex. A–7.) On October 27, 2003, the quorum court passed Appropriation Ordinance, Number 03–21 announcing it did not intend to renew the collective bargaining agreement. (*Id.* Def. Ex. A–8.) The County has not paid insurance premiums for the road workers' dependents since March 1, 2003. (Doc. 20; Strother Aff. ¶ 2.)

In the complaint, Plaintiffs first allege the County did not pay premiums for their dependents as agreed under the October 1, 2002 collective bargaining agreement. Plaintiffs also allege the County terminated the collective bargaining agreement in contravention of the termination provisions of the agreement. They seek monetary relief in an amount sufficient to cover any out-of-pocket expenses incurred as a result of non-coverage for their dependents. Further, they ask the Court to determine the contract remains in effect.

Defendants moved for summary judgment asserting the collective bargaining agreement was not an enforceable contract since County Judge Parker did not have the requisite authority to enter into such a contract on behalf of the County and since no appropriation had been passed by the Hot Spring Quorum Court. In the alternative, they argue that if the contract should be determined to be valid, it was not breached since the County properly terminated it pursuant to the agreement's termination provisions and since the quorum court appropriated the funds promised in the agreement.

Plaintiffs also moved for summary judgment. They contend County Judge Parker had authority to bind the County since his assent to the collective bargaining agreement was within the executive powers bestowed upon county judges by the Arkansas Constitution.

In determining whether summary judgment is appropriate, the Court must view the facts and inferences in the light most favorable to the non-moving party. *See Rabushka v. Crane Co.*, 122 F.3d 559, 562 (8th Cir.1997). The moving party bears the burden of establishing the absence of issues of material fact in the record and of establishing that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The parties do not dispute the facts of this case, and thus, application of Arkansas law is all that is required.

### B. Breach of Contract Claim

■ In their motion for summary judgment, Defendants argue there was no enforceable contract between the parties since Judge Parker had no authority to enter into the contract on the County's behalf. Plaintiffs argue in response that Judge Parker had such authority. Under Arkansas law, an agent of a county may not make a contract on behalf of a county unless an appropriation has been previously made by the quorum court, and if such appropriation is made, the agent may not make such a contract in an amount exceeding the appropriation. *See* Ark.Code Ann. § 14–20–106 (2003). Where there is no appropriation to support such a contract, the contract is deemed unenforceable. *See Sanders v. Bradley County Human Servs. Pub. Facilities Bd.*, 330 Ark. 675, 956 S.W.2d 187, 190 (1997). A county judge is vested with the power to "authorize and approve disbursement of appropriated county funds." *See* Ark. Const. amend. 55, § 3. Thus, it is well settled in Arkansas that before a county judge can bind a county in contract, he or she must first receive the quorum court's approval by appropriation of funds sufficient to pay for the expenditure.

There appears to be, however, an exception to the limitations imposed on a county judge's spending authority. According to the Arkansas Code, county judges are "responsible...for salaries, wages, or other forms of compensation" of county employees. *See* Ark.Code Ann. § 14–14–1102(b)(5)(A)· (2003). Although the Arkansas courts have not interpreted this phrase, such "forms of compensation" reasonably include fringe benefits like insurance and medical coverage, which employees typically receive in exchange for services performed.[1]

■ As an agent of the County, Judge Parker would not ordinarily possess the power to bind the County in contract without the prior appropriation by the quorum court. However, when he entered into the October 1, 2002 collective bargaining agreement with the local AFSCME, he exercised his executive responsibility to provide county employees with "other forms of compensation." *See id.* As county judge, he elected to continue to pay insurance premiums for the dependents of the Hot Spring County road workers as a form of compensation for their service to the County. Judge Parker thus acted within his capacity to bind the County by agreeing to Article XIV of the collective bargaining agreement.

We have concluded Judge Parker had the requisite capacity to bind the County in the agreement, and it is important to discuss the subsequent formation of the contract between the parties. In their motion for summary judgment, Defen-

---

1. In an employment situation, "['compensation'] includes wages, stock option plans, profit-sharing, commissions, bonuses, golden parachutes, vacation, sick pay, *medical benefits*, disability, leaves of absence, and expense reimbursement." *Black's Law Dictionary* 277 (7th ed.1999) (quoting Kurt H. Decker & H. Thomas Felix II, *Drafting and Revising Employment Contracts* § 3.17, at 68 (1991) (emphasis added)).

dants contend the agreement was void from its inception because no appropriation was first made by the Hot Spring Quorum Court in support of Judge Parker's signature. The case is unique, however, in that the quorum court eventually appropriated the funds anticipated in Judge Parker's assent to the October 1, 2002 collective bargaining agreement.

Defendants admit the quorum court passed Appropriation Ordinance, Number 03–08 on March 11, 2003 in order to pay insurance premiums for the dependents of the county road workers for the months of February and March 2003. (Doc. 12 ¶ 10.) Defendants also further acknowledge the quorum court voted on September 9, 2003 to appropriate funds in order to pay insurance premiums for September 2003 as well as reimburse the county's road workers for any out-of-pocket insurance expenses incurred since April 2003. (Doc. 12 ¶ 16; Doc. 10 Def. Ex. A–7.) These two events suggest an intent on the part of the quorum court to adhere to the terms of the October 1, 2002 agreement and be bound by it. The quorum court also passed a resolution on October 27, 2003 expressly denying that it ratified or adopted the October 1, 2002 agreement signed by Judge Parker. (Doc. 10 Def. Ex. A–8.) The meaning of this act by the quorum court casts doubt on their intent. Therefore, the dispute with respect to contract formation concerns if and when an agreement materialized between the parties.

■ Under Arkansas law, a county judge has the power to bind his successor for a maximum of one year following the agreement. *See Watts & Sanders v. Myatt*, 216 Ark. 660, 226 S.W.2d 800, 801 (1950). Moreover, following any agreement by a county judge, the "county may...ratify an unauthorized contract made in its behalf, if it is one the county could have made in the first instance. Such ratification will be equivalent to origi-

nal authority." *See Watson v. Union County*, 193 Ark. 559, 101 S.W.2d 791, 793 (1937); *see also Leathem & Co. v. Jackson County*, 122 Ark. 114, 182 S.W. 570 (1916).

In view of the fact that a county judge is uniquely responsible for compensation of necessary county employees, *see* Ark.Code Ann. § 14–14–1102(b)(5)(A) (2003), the agreement entered into by Judge Parker was only awaiting the quorum court's appropriation of the funds. With knowledge of the terms of Article XIV of the collective bargaining agreement, the Hot Spring Quorum Court agreed to abide by the agreement and appropriated funds to support it on two separate occasions. By doing so, it ratified the terms of the agreement and obligated the County to pay insurance premiums for the county road workers' dependents.

■ We have concluded a contract was formed between the parties, and the next issue is determining if there was a breach. Plaintiffs allege, and Defendants do not dispute, that the County failed to pay insurance premiums for the road workers' dependents since March 1, 2003. In support of their motion for summary judgment, Defendants argue in the alternative that even if there was a contract between the County and the local AFSCME, there was no breach of the agreement. According to Article XIV, Section 5 of the October 1, 2002 agreement, the County was obligated to pay insurance premiums for the county road workers' dependents from October 1, 2002 through October 1, 2003. (Doc. 10 Def. Ex. A–2.) This it did not do. The affidavits accompanying Plaintiffs' Supplemental Brief in Response to Defendants' Motion for Summary Judgment reflect that the County never paid the monies appropriated for payment or reimbursement of insurance premiums for their dependents. (Doc. 20; Strother Aff. ¶ 2.) This failure

of payment constitutes a breach of a binding agreement.

■ The next issue is Plaintiffs' contention that the agreement was automatically renewed since it was not properly terminated by either party. The Court can only conclude it was terminated in accordance with the termination provisions provided in the agreement. The contract provided that either party had sixty days to notify the other of a desired change in its terms. If either party wished to terminate the agreement, then the terminating party had to give notice to the other party "no less than ten (10) days prior to the desired termination date," as long as notice was given before the renewal anniversary date of October 1, 2003. (Doc. 1 Ex. A, Art. XV.) Plaintiffs were notified of the County's intent to terminate the agreement on two occasions during the term of the contract. County Judge Homan in a letter dated December 27, 2002 and County Judge Bailey in a letter dated May 29, 2003 both notified Plaintiffs the County did not wish to be bound by the agreement. These letters placed Plaintiffs on notice that the County did not intend to renew the agreement. The contract was, therefore, properly terminated and not renewed.

■ The final issue with respect to Plaintiffs' breach of contract claim is the extent of damages, if any, they have suffered as a result of Defendants' breach. In Arkansas, money damages are awarded in contract disputes in order to compensate the aggrieved party for breaching the contract as well as for any other damage that naturally and reasonably arises therefrom. *See generally Miles v. American Ry. Express Co.,* 150 Ark. 114, 233 S.W. 930 (1921).

■ The County failed to pay the insurance premiums for the county road workers' dependents, and several workers incurred medical expenses as a result.

According to the uncontroverted affidavit of James Bernard Strother, these out-of-pocket expenses paid by the road workers totaled $8,197.84 for the period from March 1, 2003 to August 17, 2003. (Doc. 20; Strother Aff., Ex. E.) There are no facts in the pleadings to suggest bad faith on the part of the Plaintiffs, and these expenses arose due to the County's failure to pay insurance premiums for Plaintiffs' dependents. Therefore, summary judgment is GRANTED in favor of Plaintiffs on the issue of damages. The Court determines that Plaintiffs are entitled to reimbursement of $8,197.84 for out-of-pocket expenses paid in lieu of insurance premiums for their dependents as well as out-of-pocket insurance premiums paid for insurance coverage of dependents.

## C. Contract Clause Claim

Plaintiffs also allege violations of the Contract Clause of the United States Constitution (Art. I, § 10) as well as violation of a similar provision in the Arkansas Constitution (Art. 2, § 17). Since the Hot Spring Quorum Court chose to terminate the collective bargaining agreement by complying with its termination provisions, there was no such violation.

The Contract Clause of the United States Constitution provides "No State shall...pass any...Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10. This clause requires a three part analysis. First, a court must determine whether the enactment effects a "substantial impairment of a contractual relationship." *General Motors Corp. v. Romein,* 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992). This step requires consideration of whether there is actually a contract, whether the measure actually impairs the contractual relationship, and whether the impairment is substantial. *Id.* Second, if there is a substantial impair-

ment, the court must ask whether there is a legitimate public purpose supporting the impairment. *See Home Bldg. and Loan Ass'n v. Blaisdell,* 290 U.S. 398, 444–45, 54 S.Ct. 231, 78 L.Ed. 413; *see also* 2 John E. Nowak & Ronald D. Rotunda, *Treatise on Constitutional Law* § 15.8, at 656–57 (3d ed.1999). Third, the action taken by the state actor must be narrowly tailored. *See* 2 Nowak & Rotunda, *supra,* § 15.8, at 657.

■ In the present case, Plaintiffs cannot get past step one in the three-part analysis. It is clear from the facts that the collective bargaining agreement between the County and the local AFSCME included a provision for either party to seek modification or termination. After the County's proper termination of the October 1, 2002 agreement, no contractual obligation of either party remained in place. Thus, the Defendants impaired no contractual obligations, and Defendants are entitled to summary judgment on the Contract Clause claim, and this claim is DISMISSED.

■ For like reasons, the Plaintiffs' claims for impairment of contract obligations under the Arkansas Constitution are without merit. While it is true that contracts entered into voluntarily by state entities may not be impaired through legislative acts, *see Jones v. Cheney,* 253 Ark. 926, 489 S.W.2d 785, 788 (1973), such acts are allowable so long as they do not impair the obligation of contracts. As reflected above, the modification and termination provisions in the agreement between Hot Spring County and the local AFSCME gave both parties a legitimate method for terminating the contract. Once the County gave the union members proper notice and subsequently decided not to renew the contract for another one year term, there were no further obligations on either side, and thus no impairment occurred through the acts of the quorum court. Accordingly, Defendants are also entitled to sum-

mary judgment on Plaintiffs' claim under the Arkansas Constitution for impairment of contract obligations, and this claim is DISMISSED.

### D. Plaintiff's Claim for Violation of the Arkansas County Government Code

In their complaint, Plaintiffs allege Defendants violated the Arkansas County Government Code. Specifically, Plaintiffs claim that by adopting Resolution, Number 03–21 on October 29, 2003, which announced an intent to terminate the October 1, 2002 collective bargaining agreement, the quorum court adopted a "legislative act that applies to or affects the provision of collective bargaining." *See* Ark.Code Ann. § 14–14–805 (2003). Such quorum court enactments are prohibited by the Arkansas Code. *Id.*

■ Plaintiffs' argument is without merit since the Hot Spring Quorum Court passed no ordinance that "applie[d] to or affect[ed]" collective bargaining. The quorum court's act did not prohibit the practice of collective bargaining, nor did it prescribe the manner in which collective bargaining should be utilized. The quorum court in this case merely expressed its intent not to renew the collective bargaining agreement after October 1, 2003. Such a decision was anticipated in the contract itself in the termination provisions. Accordingly, Plaintiffs' claims under the Arkansas County Government Code are DISMISSED.

### E. Conclusion

Based on the foregoing, Plaintiffs' motion for summary judgment (Doc. 22) is GRANTED with regard to Plaintiffs' breach of contract claim. Defendants' motion is GRANTED with regard to the Contract Clause claims under Article I, section 10 of the United States Constitution and

Article 2, section 17 of the Arkansas Constitution and their claim under the Arkansas County Government Code, and these claims will be DISMISSED with prejudice. All parties are to bear their own costs and attorney's fees. A separate judgment order consistent with the findings in this opinion will be entered accordingly.